# Ballou *v.* The State.

*Indictment for Peddling without License.*

1. *Peddling; selling stoves by samp'e.*—Under an indictment which charges that the defendants engaged in the business of peddling in a two-horse wagon, without a license as required by law (Code, § 629, subd. 31, 40), a conviction can not be had on proof that they were the agents of a foreign company engaged in the manufacture of stoves; that one of them travelled about in a wagon, carrying a single stove with him, selling stoves by the sample, and taking the purchaser's note payable on delivery within sixty days; and that the other afterwards carried the stoves around in a wagon, delivered them, and received payment of the notes, if the purchasers elected to pay cash at a reduced price.

FROM the Circuit Court of Geneva.
Tried before the Hon. JESSE M. CARMICHAEL.
VOL. LXXXVII.

[Ballou v. The State.]

W. D. ROBERTS, for appellants.

WM. L. MARTIN, Attorney-General, for the State.

CLOPTON, J.—The indictment charges the defendants with a violation of the revenue law, by engaging in, or carrying on the business of peddling, in a wagon drawn by two horses, without a license.   The evidence shows the facts to be as follows:   The only article sold or delivered by the defendants was a stove, called the "Wrought Iron Range Stove," which was manufactured in St. Louis, Missouri, by a company having their principal place of business in that city.   The stoves were shipped from St. Louis, by the carload, to Caryville, Florida, and kept in a warehouse for delivery as sales were made.   The defendants were agents of the company, one being the managing agent, having his place of business in Geneva in this State; and the others, salesmen and delivery-men.   The following was the mode of doing business:   The managing agent sent salesmen, who would go through the country, carrying a sample stove in a two-horse wagon, from house to house, and procure orders for stoves.   When an order was obtained, the purchaser gave a note for sixty-five dollars, conditioned to be void if the stove was not delivered in thirty days.   The orders and notes were delivered to the managing agent, who, within twenty or thirty days thereafter, would send other men with stoves, in two-horse wagons, to deliver on the orders, and put them up for the purchasers.   These men took the notes with them, to give the purchaser an opportunity to pay the cash price of sixty dollars, if he preferred, which he had the option to do. The sample stove was not sold by the salesman, but was usually left on his return from a trip to Geneva, for the delivery-man, at the last house at which he procured an order, who sometimes, by agreement with the purchaser, would put it up, instead of the stove carried for that purpose.

On these facts, the question is, were the defendants required to take out a license as peddlers, under sub-division 31 of section 629 of Code, 1886.   There being nothing in the context indicating a different intention, the term *peddler* must be construed in its ordinary popular sense.   In *Randolph v. Yellowstone Kit*, 83 Ala. 474, its popular signification is said to be, "a small retail dealer, who, carrying his merchandise with him, travels from house to house, or from place to place, either on foot or on horse-back, or in a vehicle

[Ballou v. The State.]

drawn by one or more animals, exposing his goods for sale, and selling them." The distinctive feature does not consist in the *mode* of transportation, though one of the statutory modes is essential to constitute a peddler, but in the fact that a peddler goes from house to house, or place to place, carrying his articles of merchandise with him, and concurrently sells and delivers. The defendants, who were salesmen, carried no stoves with them, but sold by sample, and took orders for subsequent delivery; and the defendants who delivered made no sales. They were not *peddlers*, in the sense in which the term is ordinarily understood.

The conclusion, that the business in which they were engaged is not within the provision relating to peddlers, does not rest solely on unaided construction. If not rendered conclusive, it is strongly supported by the different and specific provisions of the revenue law, classifying other itinerant dealers in goods, wares and merchandise, and companies or persons engaged in selling stoves or ranges. As one of the occupations for which a license is required, subdivision 34 of section 629 provides: "For transient or itinerant auctioneers, or dealers in goods, wares and merchandise, other than licensed peddlers, and other than travelling agents of whole-sale dealers in said articles, making sale thereof by sample, fifty dollars." And sub-division 40 of the same section specially provides: "Each sewing-machine, stove, range or clock company, selling sewing-machines, stoves, ranges, or clocks, either in person, or through agents, or consignees, and all persons who engage in the business of selling sewing-machines, stoves, ranges or clocks, shall pay to the State twenty-five dollars for each county in which they may so sell." There is an exception in favor of merchants engaged in a general business, which is only material as showing that the legislature exacted a license only for those who, it was contemplated, would be itinerant, going from county to county. Thus it appears, that the legislature has arranged, as to requirement of licenses, different kinds of itinerant dealers into separate and distinct classes, making variant provision for each. The defendants, being engaged in the sole business of selling stoves as agents of the manufacturing company, come within the letter of sub-division 40; and being included in this provision of the revenue law, are, by clear implication, excluded from the operation of sub-division 31. A double license fee will not be intended.

It is said, however, that subdivision 40 is unconstitutional

[Prestwood v. The State.]

as to foreign companies or persons, on the authority of *State v. Agee*, 83 Ala. 110. This question it is unnecessary to decide; for its unconstitutionality, if conceded, would not destroy or impair its effect as evidence of the legislative intent, nor operate to bring the defendants within a class not intended.

Reversed and remanded.