## PRICE COMPANY *et al.* v. CITY OF ATLANTA.

1. When one sought to be taxed under a municipal ordinance, for carrying on a particular business in a named city, seeks to set aside its provisions as to him because of the alleged unconstitutionality of such ordinance when applied to the business in which he is engaged, the burden is on him to show clearly and unmistakably the nature and character of his business, as well as his exemption from the tax imposed, before he will be entitled to an injunction to restrain its enforcement.

2. When the record contains evidence fairly warranting a finding that goods manufactured in another State were shipped in large quantities to a warehouse located in this State, and at that point divided and distributed among a number of customers, who, after such shipment, had purchased different articles of these goods from a person going from house to house in a given city in this State, exhibiting samples and taking orders, which were then filled from such warehouse or distributing-point, the sales so made did not in any sense constitute interstate commerce, and the person so selling became liable to a license-tax as a canvasser, imposed by the municipality.

3. A canvasser thus engaged is not a "traveling salesman," within the meaning of the act of December 14, 1896, prohibiting "the municipal authorities of any incorporated town from levying or collecting any tax or license on any traveling salesman engaged in taking orders for the sale of goods, where no delivery of goods is made at the time of taking such orders."

Argued May 21, — Decided July 19, 1898.

Petition for injunction. Before Judge Lumpkin. Fulton county. April 18, 1898.

*Lewis W. Thomas,* for plaintiffs.
*J. A. Anderson* and *J. T. Pendleton,* for defendant.

LITTLE, J.    The L. B. Price Company and Wilfred Paley
·exhibited their petition to the judge of the superior court of the
Atlanta circuit, making the following allegations:    The Price
Company are dealers in bibles, albums, clocks, lace curtains,
·chenille draperies, silverware, and other household furnishings,
and do business in Kansas City, Mo.    Their manner of doing
business is, that they employ agents who solicit orders for the
goods in which they deal, in the State of Georgia as well as in
·other States, by going personally to the residences of the citi-
.zens, exhibiting samples of their goods, and going from house to
house and taking orders for such goods, to be thereafter deliv-
·ered.    The sales are made through samples shown to the cus-
·tomers, which samples are never sold.    The salesmen receiving
the orders for goods send or take them to the distributing-office
of the firm, to be filled and shipped either to such salesmen or to
·others, who, when the goods are received, deliver them to the
·customers from whom orders have been previously taken.    In
·order to facilitate their business, the company has in Atlanta a
warehouse or distributing-point, to which goods are shipped
from the Kansas City house for the purpose of filling orders
taken by salesmen in Georgia.    No goods are sold from this
warehouse, and when orders are brought or sent in by those
taking them, said orders are filled from this warehouse or dis-
tributing-point.    On the 24th of January, 1898, Paley was
their agent to solicit orders in the City of Atlanta, his compen-
:sation being a certain commission on amount of sales.    On that
day Paley had with him samples and was soliciting orders for
·the company, but did not sell or attempt to sell any of the sam-
·ples.    On said 24th day of January, 1898, there was in effect
·an ordinance of the City of Atlanta requiring persons who do
business in said city for which a license is required, to apply to
the proper officer and procure the same before commencing busi-
ness, and a penalty was provided for the infraction of the ordi-
nance.    Neither the company nor Paley had registered, nor
paid any license.    The ordinance imposed a tax of twenty-five
·dollars on canvassers in the City of Atlanta; and the petition
alleged that the clerk of the council of said city had issued a fi.
·fa. for this license-tax, which had been levied on the goods of

the company and on the personal effects of Paley, in order to collect the amount thereof, and that the authorities of the City of Atlanta threatened to issue other fi. fas. and have the same levied, if petitioners continued to canvass for their goods in the City of Atlanta without paying the license; that Paley had been arrested and brought before the recorder for a violation of the ordinance and his case was then pending, and the police authorities of the city threaten to arrest him and make new cases against him under the ordinance if he continues to do business, and said authorities have threatened to arrest other agents if they continue to canvass for orders in the City of Atlanta without paying such license. Petitioners allege that the ordinance is unconstitutional, because it is repugnant to article 1, section 8, paragraph 3, of the constitution of the United States; and is also repugnant to the act of 1896 of the State of Georgia, which prohibits any municipal authority from levying or collecting a tax from any traveling salesman engaged in taking orders for the sale of goods, where no delivery of such goods is made at the time the order is taken. The petitioners pray for an injunction against the City of Atlanta and the tax officers of said city, restraining them from collecting the license-tax and from arresting Paley or any other agents of the company for a violation of the tax ordinance.

The defendants answered, in effect basing their defense on the averment that the property of the Price Company in Georgia is subject to taxation; that the plaintiffs do a local business which is not interstate commerce, nor done by traveling salesmen within the meaning of the act of 1896. They further averred that the defendants are not trying to enforce any liability of the plaintiffs to the City of Atlanta to register their business as canvassers or to pay registration tax as canvassers; but they aver that Paley is a canvasser and doing business as such in the City of Atlanta and is subject to register his business and is therefore liable. They do not claim the right to proceed either by execution or otherwise against the Price Company or their goods, for Paley's default in the matter of registration tax. On the hearing, the city introduced George H. Saxe, who swore that he was employed by the City of Atlanta in

connection with the tax committee; that he was familiar with the storehouse or warehouse kept by the Price Company on Forsyth street; that said company received large shipments of goods at said place in boxes, and the boxes were opened, the goods taken out and put upon shelves in the store. The company had a bookkeeper, an office and typewriter in the store, and kept the doors of the same open. The usual stock carried by the company amounts to twelve hundred dollars. The city further proved by Saxe and Hunter, that on the day they made affidavit, they were in the store or warehouse of the Price Company at No. 112 Forsyth street. In that store there are about twenty clocks fastened or hung to the walls; there are about a half-dozen rugs in the front window of the store and arranged so as to display them; such rugs or similar ones have been in the store for a month past; there are a good many white lace curtains, or imitation lace curtains, which are not in boxes, but are folded and put on the shelves; and the clocks now on the walls or others like them have been there three or four months. On the part of the company and Paley, an affidavit of W. F. Crall, one of the firm of the Price Company, was introduced. This witness swore to the truth of the statements in the petition. He further stated, that large shipments of goods to the warehouse or distributing-house of the company at No. 112 Forsyth street were made by the Kansas City house for the purpose of filling orders for goods taken by their traveling salesmen. Sometimes the goods came in large packages; when such was the case, the several orders were taken out and laid on the shelves for the purpose of filling orders; the goods were not put on the shelves for the purpose of selling them directly to the customers, but they were put there for convenience awaiting shipment. He further stated, that the firm kept a bookkeeper and a typewriter in the store or warehouse, but they were not used to carry on any daily retail business, but for the purpose of keeping the run of the orders sent in by their traveling salesmen and of the goods shipped by the Kansas City house to the Atlanta warehouse for the purpose of filling orders; that the doors of this warehouse were kept open in order to receive goods and to ship the same out; that the stock of goods on hand was not for the purpose of

carrying on a retail business in the city, but were stored there for the purpose of filling orders; that the clocks and rugs and white lace curtains are goods which have been heretofore sold on orders by salesmen and which were refused by the customers and returned to the warehouse, and that said goods consist partly of goods which are kept there by the Kansas City firm as samples for traveling salesmen. After hearing argument, the court denied the injunction as to Paley.

1. The principle of law announced in the first headnote need not be elaborated at any length. It is elementary that taxation is the rule, and exemption from taxation the exception, and that one claiming to be exempt must be able to show such exemption by the clear and express provisions of some law. It is also true that one who attacks an act of a governmental body in whom the right of taxation has been vested, on the ground of the unconstitutionality of such act, must make its invalidity clearly and unequivocally appear. The conflict between the act and the fundamental law must be clear and palpable, to warrant the courts in declaring the act unconstitutional. *Wellborn* v. *Estes,* 70 *Ga.* 390; *Howell* v. *State,* 71 *Ga.* 224. And any doubt on this point will be resolved in favor of the constitutionality of the enactment. *Scoville* v. *Calhoun,* 76 *Ga.* 269. The petition and evidence in the record of the case under consideration do not show that the orders taken by the salesmen were forwarded to the Price Company at their place of business in the State of Missouri, nor do they show that such orders were filled in the State of Missouri and shipped to Atlanta for delivery to the respective purchasers. It may be that such is implied from the language used by the member of the firm who testified on the hearing. In the petition it is stated that the orders are sent or taken to the distributing-office of the firm to be filled and shipped to the salesmen or others who deliver the goods, when received, to the customers from whom orders have been previously taken; that in order to facilitate the business the firm has in the City of Atlanta a warehouse or distributing-point, to which goods are shipped from the Kansas City house for the purpose of filling orders taken by the salesmen in the State of Georgia; that when orders are brought or sent in by those tak-

ing them, they are filled from this warehouse or distributing-point.    The evidence introduced by the City of Atlanta tended to show that the firm had a store on Forsyth street in which was placed a stock of goods of the value of twelve hundred dollars, and that the doors of the store were kept open and a display of the goods made in the window.    It was peculiarly within the province of the member of the firm who testified, to clearly and unmistakably show the nature and character of the business in which said firm was engaged in the City of Atlanta.    If it be true that, when orders were taken by canvassers, such orders were sent to the Kansas City house, and, being filled there, were shipped to the warehouse in the City of Atlanta for distribution, a simple statement of that fact would have obviated the necessity of any construction of the language used by the witness. If it be true that orders sent in by salesmen were not sent directly to and filled from the goods on hand in the Atlanta warehouse, a statement of that fact, clearly and explicitly made, would also have obviated the necessity of any construction of language to ascertain what the witness meant.    These plaintiffs in error sought an injunction against the city because, as they alleged, the tax ordinance as to them was unconstitutional. Whether constitutional or not depended upon the nature and manner in which they conducted their business; and if the petitioners failed to show that their business was conducted in a manner which made them exempt from this tax, when in fact they were exempt, the fault is attributable to them alone.    Certainly they were not entitled to an injunction restraining the enforcement of the tax ordinance against them, unless they made it clearly appear that they were exempt from its operation.

2. Neither the petition nor the evidence in the record shows that the orders taken by the salesmen are forwarded to be filled by the Price Company at their place of business in Kansas City, Mo., nor that such orders are in fact filled at that point and shipped to Atlanta for delivery, to the respective purchasers. Neither does the record show that goods are shipped to Atlanta by the firm from Kansas City only after orders from customers have been there received.    In the petition it is stated that the orders are sent or taken to the distributing-office of the firm, to

be filled and shipped to the salesmen or others, who deliver the goods, when received, to the customers from whom orders have been previously taken; that in order to facilitate the business, the firm has in the City of Atlanta a warehouse or distributing-point, to which goods are shipped from the Kansas City house for the purpose of filling orders taken by the salesmen in the State of Georgia; that no goods are sold from this warehouse, *but when orders are brought in or sent in by those taking them, they are filled from this warehouse or distributing-point.* The language italicized is susceptible of no other construction than that goods are lodged in the warehouse in Atlanta in advance of any orders being procured therefor, and that orders when taken in Georgia are brought or carried directly to this local warehouse, and filled from goods belonging to the firm previously shipped. Indeed, the petition alleges that the orders are taken or sent to the distributing-office of the firm to be filled, and then designates the warehouse in Atlanta as a distributing-point for Georgia. The evidence for the complainants tended to show that all of the statements made in the petition were true; that large shipments of goods were received at the warehouse in Atlanta from the Kansas City house, not for the purpose of selling them directly to customers, nor for carrying on any daily retail business, but for the purpose of filling orders taken by their traveling salesmen. Sometimes goods came in large packages, in which event separate orders were taken out and laid on the shelves and anywhere else in the warehouse for the purpose of filling orders. The bookkeeper and typewriter who stay in the warehouse are not used for the purpose of carrying on any daily retail business, but for the purpose of keeping the run of the orders sent in by their traveling salesmen and of the goods shipped by the Kansas City house to the Atlanta warehouse for the purpose of filling orders. The petition and evidence clearly mean that goods are stored in the warehouse in Atlanta, that no retail business is done from the counters, but that soliciting-agents go from house to house, take orders, carry or send them into the warehouse in Atlanta, where the orders are filled from the stock of goods therein contained. If it appeared that all orders were first sent to the Kansas City house, filled there, consolidated into

one shipment and sent into Atlanta, the package there broken and the separate orders so prepared and filled in Kansas City stored in the warehouse awaiting delivery, a different question might arise. But that is not this case. The goods are sent into this State, not sold, but for the purpose of being sold. While it is exclusively the province of the United States Congress to regulate commerce between the States and to protect such commerce from hostile or interfering State legislation, yet, when products are shipped from one State and lodged in another State, there to be offered for sale in open market, such products lose the character of interstate commerce and assume a domestic character, merging and sinking into and becoming intermingled with the general mass of property in such State, and are subject to the laws of taxation which there exist, and the business of selling such products is alike taxable. *Singer Mfg. Co.* v. *Wright,* 97 *Ga.* 114, citing Brown *v.* Houston, 114 U. S. 622.

In support of the contention that Paley was engaged in soliciting orders for goods which should be regarded and treated as interstate commerce, counsel for plaintiff in error cites, among others, the case of *Wrought Iron Range Co.* v. *Johnson,* 84 *Ga.* 754. In that case it appeared that the agent of the company was provided with a sample stove, that he traveled over certain territory allotted to him, exhibited the sample, took orders for the company for the purchase of such stoves from persons desiring to buy, transmitted the orders to the superintendent of the company at his headquarters, which were sometimes in such territory and sometimes in another State, and the company thereupon, *from its home office and place of business* (which was in St. Louis, Mo.), filled the orders through the superintendent and delivered the ranges as the orders were taken, but in no case did the agent sell or deliver the sample ranges intrusted to him. The company had no place of business in Georgia, but ranges were sometimes stored in warehouses, after they were sold by sample, until delivered to the purchasers. Under this state of facts, it was held that an agent who took such orders in Floyd county, Georgia, though a peddler within the meaning of the code of this State, was protected, by the interstate commerce clause of the Federal constitution, against the

provisions of the code requiring a license to peddle, etc.   The decision made was based upon adjudications of the Supreme Court of the United States.   It is not necessary and would not be proper for us in an informal way to question the correctness of the decision rendered; but for myself I take the opportunity of saying that the principle which it rules has been, at least, carried to its extreme limit.   The present case, however, is quite dissimilar in its facts, and the principle announced as correct in that case, can not apply here.   It must follow that the license-tax imposed in this case was not in conflict with the provisions of the Federal constitution before referred to; and accordingly there was no error in refusing to grant the injunction on this ground.

3. The plaintiffs in error insist that Paley was a traveling salesman, and for that reason protected against the license-tax imposed, by the provisions of the act of the legislature of this State, approved December 14, 1896 (Acts of 1896, p. 36), entitled: "An act to prohibit the municipal authorities of any incorporated town from levying or collecting any tax or license on any traveling salesman engaged in taking orders for the sale of goods, where no delivery of goods is made at the time of taking such orders."   In the body of the act it is declared that it shall not be lawful for the municipal authorities of any incorporated town to levy or collect any tax or license from any traveling salesman engaged in taking orders for the sale of goods where no delivery of goods is made at the time of taking such orders. The term "travel" has no precise or technical meaning when used without limitation.   Its primary and general import is to pass from place to place, whether for pleasure, instruction, business or health.   Lockett *v.* State, 47 Ala. 45.   Webster defines a traveler as one who travels in any way—distance is not material.   Black, in his Law Dictionary, defines the term to mean: "To go from one place to another at a distance; to journey," etc.   "Canvass" is defined in the Standard Dictionary of the English Language, to mean: "To go about (a region or district) to solicit votes, orders, subscriptions, or the like; traverse (a district or region) for inquiry, or in the effort to obtain something; . . as, to *canvass* a territory for a subscription-

book," etc.  As has been said, the word "travel" has no precise
or technical meaning when used without limitation.  In con-
struing statutes, the ordinary signification shall be applied to
all words, except words of art, or connected with a particular
trade or subject-matter, etc.; and in all interpretations the court
shall look diligently for the intention of the General Assembly,
keeping in view at all times the old law, the evil and the remedy.
Political Code, §4, par. 1, 9.   The subject-matter of the act
frequently has quite a material bearing upon the signification
of words or terms used therein.   For instance, under statutes
relating to the rights of travelers upon highways or streets, a
resident of the county, district, or town, passing over such high-
way or street, even though for a short distance, or going to and
from his home or business, might as well be regarded as a trav-
eler as a non-resident journeying through the country.   So, un-
der a statute relating to the rights of travelers or guests at ho-
tels, a townsman or neighbor may be a traveler and therefore a
guest at an inn, as well as he who comes from a distance or from
a foreign country.   Walling *v.* Potter, 35 Conn. 183.   The pro-
visions of the act of 1896 apply to all the incorporated towns in
this State.   The term "traveling salesman" used in that act
means to include only that class of persons engaged in selling
goods either by sample or otherwise, who travel on this business
from city to city and from town to town, and whose business re-
lations are connected with those who in such cities or towns are
likewise engaged in business which contemplates a resale of the
goods sold, or consumption in large quantities.   The provisions
of that act do not contemplate another and entirely different
class of persons who, in a given town, city or county, go from
house to house in their effort to take orders for goods.   The lat-
ter are canvassers, not traveling salesmen, and are not embraced
within the terms of the act of 1896.

The court committed no error in denying the injunction, and
the judgment is      *Affirmed.   All the Justices concurring.*