KIMMEL *v.* MAYOR AND COUNCIL OF AMERICUS.

1. Where a municipal ordinance, in one section, provides that "Ped-
   dlers engaged in selling any kind of merchandise shall pay per year
   $500.00," and in another section provides that "Transient traders or·
   dealers who shall take orders for any of the following-named arti-
   cles at retail shall, before offering the same for sale, or soliciting or-
   ders, take out a license, to be fixed by the mayor, viz.: clocks,
   watches, clothes, shirts, dry-goods, boots, shoes, hats, caps, hardware,.
   jewelry, spectacles, silver and plated ware, fancy goods, groceries
   or furniture," an agent engaged in going from house to house, carry-
   ing samples of curtains and rugs, and taking orders for such goods,
   which orders are filled by his principal, is not a peddler, within the
   meaning of the ordinance.
2. Though such agent may in a single instance offer to sell, or even ac-
   tually sell, one of the samples which he carries with him, this fact.
   alone would not render him liable to pay the license imposed upon
   peddlers.
3. An agent of a firm or corporation who goes from town to town in
   this State, exhibiting samples of goods and taking orders on his em-
   ployer or employers for such goods from consumers, is a "traveling·
   salesman," within the meaning of the act of December 14, 1896.

Argued October 4,—Decided October 17, 1898.

Certiorari.    Before    Judge    Littlejohn.    Sumter    superior·
court.    August 2, 1898.

*W. P. Wallis* and *J. B. Hudson,* for plaintiff in error.
*F. A. Hooper, solicitor-general,* and *James Taylor,* contra.

FISH, J.    1. We are of opinion that the judgment of the·
court below, affirming the judgment of the municipal court and
dismissing the certiorari, was erroneous.    The defendant in the·
municipal court was tried "for violating license ordinance and
peddling in the city of Americus, Ga., without license."    The·
prosecution introduced in evidence the following section of the
license ordinance of the city for the year 1897: "Peddlers en-
gaged in selling any kind of merchandise shall pay per year·
$500.00."    The accused put in evidence the following portions
of the ordinance: "Transient traders or dealers who shall
take orders for any of the following-named articles at retail
shall, before offering the same for sale, or soliciting orders, take·
out a license, to be fixed by the mayor, viz.: clocks, watches,
clothes, shirts, dry-goods, boots, shoes, hats, caps, hardware,

jewelry, spectacles, silver and plated ware, fancy goods, groceries or furniture.   Persons who from their general commercial actions or professions shall make it evident to the mayor and city council that they are not bona fide resident merchants, shall be considered transient traders or dealers."   The evidence failed to show that the defendant was a peddler, within the meaning of the word "peddlers" in the municipal ordinance in question.   Whether the word "peddler," when used in a municipal ordinance, without any descriptive words enlarging or qualifying its ordinary meaning, should, generally, be construed in the sense in which this court has decided it is used in the code, we are not called upon to determine.   Counsel representing the city cite the case of *Wrought Iron Range Co.* v. *Johnson,* 84 *Ga.* 754, in which it was held, that " One whose vocation is to go from place to place with a sample stove carried upon a wagon, exhibit the sample and procure orders which his employer afterwards fills by delivering through other agents the stoves so ordered, is a peddler within the meaning of the Code of Georgia." That decision was based upon a construction of the following provisions of section 1631 of the Code of 1882, which are now embodied in section 1640 of the Political Code: "Every peddler or itinerant trader, by sample or otherwise, must apply to the ordinary of each county where he may desire to trade, for a license, which shall be granted to him on the terms said ordinary has or may impose," etc.   Under that decision we think that the evidence in the case at bar showed that the accused was a peddler, within the meaning given to that word by the code.   We think it is evident, however, that the word " peddlers " in the ordinance in question was not intended to have the enlarged meaning which it has in the code.   While the license for "peddlers engaged in selling any kind of merchandise" is absolutely fixed at $500 per year, a separate provision is made for "transient traders or dealers" taking orders for goods at retail, who are required to take out a license to be fixed by the mayor.   The fact that a distinction is made in the ordinance between "peddlers" and "transient traders or dealers" taking orders for goods at retail,—the former being required to pay a fixed, and what seems, for the city in question, a very high license, and the amount to

be paid for a license by the latter being left entirely in the discretion of the mayor, shows that the word "peddlers" was not intended to include transient traders taking orders for goods. In this view of the matter, we do not think it makes any difference whether the catalogue of goods in the section of the ordinance which treats of transient traders or dealers is exhaustive or not. It is sufficiently comprehensive, we think, to show that if any particular article or class of goods was left out of the list, it was either by mere inadvertence, or for the purpose of allowing those taking orders for it to do so without paying a license for so doing. It appeared from the defendant's statement that he was engaged in going from house to house in the city of Americus, carrying samples of curtains and rugs, and taking orders for such goods, which were filled by The L. B. Price Company, of Kansas City, Missouri, which he represented; and he had neither sold nor offered to sell any of the goods which he carried with him as samples. It was admitted by the prosecution that "Mr. E. L. Stanfield bought a rug from the defendant, paying for it in instalments, taking a contract; and it was not delivered until two weeks after he took the order; and that he made a contract whereby the L. B. Price Company took title to the goods; that he told Mrs. Ragan that he was taking orders to be delivered in the future, and that she gave him an order to be delivered in the future." Only three witnesses were introduced by the city. One of these was the city marshal, whose testimony, except in so far as it involved mere hearsay and the opinions of the witness, was not at all inconsistent with the defendant's statement. The testimony of the second witness, Nina Postell, corroborated the statement. The only thing in the testimony which conflicted in the slightest degree with this statement of the defendant was the evidence of the witness Leona Lee. Counsel for the city contend that her testimony shows that he came to her house and sold her a curtain which he carried around with him, or one which he at least had in Americus at the time he took an order from her. We do not think that Leona Lee's testimony shows that the defendant sold her a curtain. Taking her evidence in the strongest light against him, and without considering it in the light of the explanation which

he gave of the transaction with her, it simply shows an effort on his part to sell to her one of the curtains which he carried as a sample. According to his statement, with which her testimony is perfectly reconcilable, he did not even offer to sell her one of his samples, but intended and did undertake to fill an order which he obtained from her with a curtain which was to be forwarded to him from Birmingham, Alabama, by the house which he represented, upon an order which he had obtained from an·other party, who had countermanded the order after he had sent it to the company which he represented. In the light of the other testimony and·the admissions of the prosecution, the evidence of Leona Lee was wholly insufficient to show that the defendant's vocation while he was in Americus was different from what it appeared to be from his statement. If the only vocation in which the defendant engaged in Americus was to go from house to house, carrying samples of curtains and rugs, and taking orders for such goods, to be filled by the company which he represented, he was not a peddler, within the meaning of the municipal ordinance. That a person engaged in such business is not a peddler, where the statute or ordinance does not undertake to enlarge the ordinary meaning of the word, see Town of Spencer v. Whiting, 68 Iowa, 678; Davenport v. Rice, 75 Iowa, 74; Commonwealth v. Farnum, 114 Mass. 267.

2. The mere fact that a person engaged in such vocation, in a single instance, offers for sale or actually sells an article which he carries with him as a sample, will not make him a peddler. If, in connection with proof of a single sale, it were also shown that he went from house to house trying to sell the goods which he had with him, we think he might be considered a peddler. But proof of a single sale of one of his samples, without more, would not be sufficient to show that he was a peddler. Rex v. Little, 1 Burr. 609; Town of Spencer v. Whiting, and Com. v. Farnum, supra; State v. Morehead, 42 S. C. 211, s. c. 26 L. R. A. 585. See also Re Houston, 47 Fed. Rep. 539, s. c. 14 L. R. A. 719; State v. Ray, 109 N. C. 736, s. c. 14 L. R. A. 529.

3. We next consider whether the business carried on by the accused in Americus was protected from municipal taxation by the act of Dec. 14, 1896. We think it was. That act provides,

that " it shall not be lawful for the municipal authorities of any incorporated town to levy or collect any tax or license from any traveling salesman engaged in taking orders for the sale of goods where no delivery of goods is made at the time of taking such orders." We are of opinion that the defendant was a "traveling salesman" within the meaning of this act.

It was admitted that "the headquarters and general offices and main and principal shops [of The L. B. Price Company] are at Kansas City, Missouri; that the goods are shipped from Kansas City to the distributing-points, and that the accounts are kept in Kansas City, Missouri." The defendant stated that the distributing-points of the Price Company were Houston, Texas, Birmingham, Alabama, and Atlanta, Georgia; that his home was in the State of Iowa, and he traveled over Georgia and several other southern States, representing this company and taking orders for goods. He also stated that all the goods for which he took orders in Americus were shipped to him, upon such orders, from the Birmingham distributing-point, and he delivered them to the customers who had ordered them. There was nothing in the evidence introduced by the city which at all conflicted with this portion of his statement, unless it be the testimony of Leona Lee, to which we have already alluded; and the evidence of the express agent at Americus, who was introduced by the defense, tended to confirm the statement with reference to the point from which the goods were shipped to the defendant. No effort was made to prove that the accused lived in Americus, or even in Georgia. We apprehend that the term "traveling salesman" can not properly be confined simply to those persons who travel from place to place, representing wholesale houses or manufacturers, and taking orders for goods only from persons or firms who buy to sell again. It seems to us that one who represents a manufacturer or a retail house, and goes from place to place, taking orders on his house from consumers, is as much a "traveling salesman" as a drummer who confines his dealings to merchants. A drummer who goes from town to town, taking orders from manufacturers for machinery, fuel, oil, belting or other necessary supplies, which are to be consumed in the purchaser's business, although he may take orders

only from consumers, is as much a traveling salesman as he would be if he took orders for such articles only from those who purchased them with a view of selling them again.   We can not see that it makes any difference whether the person who goes from town to town taking orders for goods deals only with merchants or large consumers, or takes orders only from very small consumers.   In either case we think he is a traveling salesman, within the meaning of the term as employed in this act. We apprehend that one purpose of the General Assembly, perhaps the main one, in passing this act was to protect the traveling representatives of mercantile houses or manufacturers located in this State from municipal taxation, because of the fact that the salesmen or agents of merchants or manufacturers located and holding their goods in other States can come into Georgia and take orders for such goods without paying any municipal tax whatever, being protected from such taxation by the constitution of the United States.   To hold that the term " traveling salesman" does not apply to a person carrying on the kind of business in which the accused was engaged in Americus, would be to hold that the agents of firms and manufacturers which are located in other States can come into the towns and cities of Georgia and take orders for their principals from consumers in this State, unhampered by municipal taxation, and yet that the municipalities in Georgia can tax the traveling agents of our resident firms and manufacturers who undertake to do the same thing.   This, it seems to us, would in a great measure defeat the purpose which the legislature had in view in passing the act.   The traveling agents of dealers located and keeping their stocks of goods in other States needed no protection from municipal taxation from the lawmaking power of Georgia.   It was only the traveling representatives of Georgia merchants and manufacturers who needed such protection ; and we think the legislature intended to protect such agents who take orders from consumers, as well as those who take orders only from dealers.   The decision of this court in the case of *Price Co.* v. *City of Atlanta,* 105 *Ga.* 358, which is cited by counsel for the prosecution, is not in conflict with these views.   The evidence warranted a finding in that case that the agent of the L.

B. Price Company, who it was claimed was a "traveling sales-
man" within the meaning of the act of 1896, lived in Atlanta
and canvassed that city for orders which were filled by the Price
Company from a stock of goods which were kept by the company
in Atlanta.   He was no more a traveling salesman than the
driver of a grocer's wagon, or the grocer's clerk, who goes around
from customer to customer in the city where the grocer keeps
his goods and conducts his business, delivering goods which have
been purchased from his principal and taking orders on such
principal for other goods.   He was merely a local salesman, and
it was rightly held that he was not protected from municipal
taxation by the act in question.

The above rulings absolutely control the present case, and it
is unnecessary to consider the constitutional question made in
the record.

*Judgment reversed.   All the Justices concurring.*