## V. L. POTTS v. THE STATE.

### No. 2514. Decided March 26, 1903.

**1.—Occupation Tax—Peddlers—Information.**

An information under the second section of the Act of May 12, 1899, prescribing an occupation tax upon peddlers, to be sufficient, must negative the fact that the accused is a merchant, who is exempt when selling in his place of business.

**2.—Charge of Court.**

In its charge, the court should never assume the guilt of defendant and instruct a conviction. Such a charge is upon the weight of evidence and is inhibited by statute.

**3.—Peddler—Drummer—Distinction Between.**

A peddler is an itinerant vender of goods who sells and delivers the identical goods carried with him. A drummer is one who sells to retail dealers or others by sample, or by catalogues or otherwise, and does not sell and deliver the goods at the same time.

**4.—Same—Evidence Insufficient.**

See opinion for facts stated which are held insufficient to support a conviction for peddling without payment of the occupation tax upon peddlers.

Appeal from the County Court of Milam. Tried below before Hon. R. B. Pool, County Judge.

Appeal from a conviction of peddling without payment of the occupation tax and obtaining license to pursue such occupation; penalty, a fine of $500.

The facts are fully stated in the opinion. The charge of the court was: "In this case you are instructed to find defendant guilty and assess his punishment at a fine of not less than $375, and not more than double that amount."

*Henderson, Streetman & Freeman,* for appellant.—The court erred in refusing to sustain defendant's motion in arrest of judgment, because the complaint and information in this case is insufficient in that it does not negative the exceptions contained in the section of the law under which said complaint and information is filed.

The complaint and information in this case allege that the defendant did "unlawfully engage in, pursue and follow the occupation of a peddler engaged in selling cooking stoves and ranges, an occupation taxed by law, without first having obtained a license therefor," and then alleges the amount of taxes due to State and county for such occupation.

It does not allege that the defendant was not then and there a merchant who paid an occupation tax as required by law. State v. Clayton, 43 Texas, 410; Leatherwood v. State, 6 Texas Crim. App., 244; Colchell v. State, 23 Texas Crim. App., 584; Rice v. State, 37 Texas Crim. Rep., 36, 38 S. W. Rep., 802; Williams v. State, 37 Texas Crim. Rep., 238, 55 S. W. Rep., 570, 66 S. W. Rep., 1103.

A peddler is a person who travels about from place to place soliciting and selling goods, wares and merchandise, delivering them as he makes the sale; and a person employed upon a salary by a nonresident corporation, who travels through the country carrying a sample of merchan-

dise and soliciting orders for future delivery, but who does not offer for sale the sample which he carries and does not himself deliver the goods ordered, is not a peddler and is not liable to pay an occupation tax as such.

The defendant requested special instructions, as follows: 1. A peremptory instruction for defendant. 2. A definition of a peddler in the language of the foregoing proposition, and instructing the jury that if defendant was not a peddler as thus defined, to find him not guilty. 9. Setting out to some extent the evidence in the case and presenting to the jury, as an issue of fact, whether the business was conducted in the manner above stated, and instructing them that if such was the case to acquit the defendant. 11. Presenting the issues of fact to the jury, in the same manner as in number 9, and directing the jury that under such state of facts that they could not convict the defendant, if the said business was so conducted in such manner in good faith, and with the honest intention and purpose of not peddling but conducting its business in accordance with the laws of Texas and in such manner that it would not be liable for the payment of said taxes, although said business may have been conducted in said manner for the purpose of avoiding the payment of the occupation tax levied against peddlers. All of these instructions were refused. Gen. Laws of 26th Leg., p. 201; Saulsbury v. State, 63 S. W. Rep., 568; Emmert v. Missouri, 156 U. S., 296 (opinion of Supreme Court of Missouri in same case, 11 Law. Rep. Ann., 219); Hewson v. Englewood, 21 Law. Rep. Ann., 736 (N. J.); State of South Carolina v. Morehead, 26 Law. Rep. Ann., 585; Pegues v. Ray (La.), 23 So. Rep., 904; State v. Lee, 113 N. C., 681 (18 S. E. Rep., 713); State v. Gibbs, 115 N. C., 700 (20 S. E. Rep., 172); Ballou v. State, 87 Ala., 144 (6 So. Rep., 393); Emmons v. City of Lewiston, 132 Ill., 380 (24 N. E. Rep., 58); Commonwealth v. Farnum, 114 Mass., 267; In re Wilson (District of Columbia), 112 Law. Rep. Ann., 624; Wrought Iron Range Co. v. Johnson (Ga.), 8 Law. Rep. Ann., 273; Duncan v. State (Ga.), 30 S. E. Rep., 755; Kimmel v. City of Americus (Ga.), 31 S. E. Rep., 623; Ex parte Taylor (Miss.), 38 Am. Rep., 336; Davenport v. Rice, 75 Iowa, 74; Kansas City v. Collins, 34 Kan., 434; 5 Am. and Eng. Enc. of Law, 2 ed., p. 290; Bouv. Law Dict., title Peddler; Wrought Iron Range Co. v. Cave, 118 N. E. Rep., 329; Higgins v. Rinks, 47 Texas, 392; Hall v. State, 39 Texas, 668; Commonweauth v. Ober, 12 Cush. (Mass.), 495; Randolph v. Yellowstone Kit, 83 Ala., 472, 47 Ala., 440, 142 Ind., 40.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted under the second section of the Act of May 12, 1899, which is as follows: "From every person or firm who peddles out clocks, agricultural implements, cook stoves or ranges, wagons, buggies, carriages, surreys and other similar vehicles, washing machines and churns, an annual tax of $250, to be

paid in each county in which said occupation is pursued; provided, that a merchant who pays an occupation tax, as now required by law, shall not be required to pay this special tax for selling the articles named in this section, when sold in his place of business." The information fails to negative the matter set out in the latter part of the section, and, for this reason, it is criticised as being insufficient to charge the offense sought to be charged. We believe this contention is correct. It is not an offense against the law if the party is a merchant who pays the occupation tax for selling the articles in his place of business. This then becomes a part of this offense, and the statute can not be intelligently read, omitting this proviso, so as to carry out or arrive at the intention of the legislative mind in defining the offense. And to charge the offense of failing to pay the $250, under the circumstances set out in the statute, it would be necessary, in order to hold the accused accountable, to show he was not exempt by reason of having paid the occupation tax for selling goods in his place of business. In other words, if he has paid the occupation tax of a merchant, as required by law, he is not amenable to this special tax, for as such merchant he is selling in his place of business. It occurs to us that the information should have negatived the fact that he was such merchant selling in his place of business.

It is further contended that the court erred in giving the peremptory instruction to the jury to convict appellant, and that appellant was not a peddler within contemplation of this law. Without going into a detailed statement of the evidence, it is shown that appellant represented and was the agent of the Wrought Iron Range Company, a private corporation, duly incorporated under the laws of the State of Missouri; that it had filed with the Secretary of the State of Texas a certified copy of its articles of incorporation, and had obtained from such Secretary a permit to do business in Texas; that said company, acting through Ben. P. Scott, rented a house in Cameron, Milam County, in which its ranges were stored until they were taken out to be delivered to purchasers. The business was carried on substantially as follows: That they had "sample men" and "delivery men." The sample men were furnished by Scott with a wagon and team, which was the property of the Wrought Iron Range Company, and a sample range; and certain territory in Milam County was designated for each of said sample men, which they canvassed. A range was taken by each of the sample men, and used by them in canvassing. These were exhibited to those to whom sales were expected to be made. When sales were made, they were either for cash or credit. If on credit, the sample men took the note for the price, which was made payable on October 1, 1901; and the form of note was given each sample man, and they had no authority to alter it. After the order was taken it was brought to the manager, Scott, at Cameron, who, after investigating the credit of the proposed purchaser, if satisfied, the range was delivered; if not, it was "turned down," and the range was not delivered. The sample man had no discretion as to whether or not the order was filled; this was left entirely to the discre-

tion of Scott, who had full power at all times, and at all times exer- cised it, to fill orders, arrange for board of men and animals, rent store- rooms, hire and discharge employes of said Wrought Iron Range Com- pany, working with or under him, and to do, in fact, any and all things necessary in the selling of ranges in Scott's territory. Scott received the shipment of the ranges, which were consigned to the order of the Wrought Iron Range Company, in care of said Scott, and stored the ranges and sold them through his sample and delivery men, receiving the cash and notes taken by the sample men, and sending the cash and notes to the Wrought Iron Range Company. But Scott had no place of busi- ness in Milam County in which he sold ranges, and did not in fact, in per- son, make any sales or deliver any range. No order or note taken by the sample man was ever sent to the Wrought Iron Range Company at St. Louis to be filled; nor did it pass on the sufficiency of any order or notes, or, in fact, know of any transaction or sale made until the note or cash therefor was sent to it by said Scott. The notes were afterwards col- lected by a collector sent into the territory by the Wrought Iron Range Company for that purpose. Some of the orders taken were refused by Scott, because the credit of the intended purchaser was not satisfactory; and in such case the range was not delivered. If the order or note was satisfactory, Scott had the range delivered to the purchaser; and for this purpose two of the employes of the Wrought Iron Range Company were set apart, who were working under the direction of Scott, and known as "delivery men." These were furnished with a wagon and team, the property of said company, and the names and places of the residences of the purchasers, and they delivered the ranges in the same condition as when taken from the cars and stored in the wareroom. The state- ment of facts here describes the manner of shipment from St. Louis to the storeroom in Milam County, which is not necessary to detail. At no time, in said county, was a delivery ever made of a range at the time the order was taken. Under the terms of the order, defendant had sixty days in which to make the delivery of the range, but as a matter of fact they were usually delivered within from three to ten days from the time the order was taken. None of the "sample men" ever delivered a range; nor did any of the "delivery men" ever take or offer to take an order for a range; nor did Scott, in person, ever take an order, sell or deliver a range. The delivery men did not deliver for any particular sample man, or in any special territory, but delivered when and where they were directed by said Scott; sometimes delivering a range ordered through one sample man, and sometimes a range through another sample man. All of the parties named worked on a salary paid by the Wrought Iron Range Company; who also paid all their expenses, board, etc. Two car loads of ranges, numbering about 130, were shipped to Cameron, about sixty-five of which were delivered and sold in Milam County. "The business of selling said wrought iron ranges was conducted in the above manner in order to avoid paying the heavy tax, $250 for the State, and $125 in the county, in each county in which a sale is made, which tax

is levied against every person or firm who peddles out cooking stoves or ranges, and for the failure to pay which these cases are being prosecuted." This plan of doing business was in pursuance to the advice of the law firm of Finley, Harris, Etheridge & Knight, of Dallas, and Henderson, Streetman & Freeman, attorneys, at Cameron, who advised them that a business conducted as above stated would not be violative of the law; that, in their opinion, under the decisions of this State, it would be interstate commerce; and, independent of the question of interstate commerce, the agents of the Wrought Iron Range Company would not be peddlers within the meaning of the law above mentioned. That neither the Wrought Iron Range Company, nor any of the defendants, have ever paid any occupation tax in Milam County, nor procured any license as peddlers.

We deem it unnecessary to discuss at length the peremptory charge of the court instructing the jury to find defendant guilty and assess his punishment at not less than a fine of $375 nor more than double that amount. This is so clearly a charge upon the weight of the testimony that, in our opinion, it does not need discussion. The court should not assume the guilt of an accused and so charge the jury. This is inhibited by statute.

In our opinion the second contention is clearly tenable, to wit, under the facts stated, appellant was not a peddler within the contemplation of the section of the act above quoted. This question has been so frequently discussed that we deem it unnecessary to enter into an extended review of the decisions. Saulsbury v. State, 43 Texas Crim. Rep., 90, following Emert v. State, 156 U. S., 296, same case, 11 Law. Rep. Ann., 219. In Saulsbury's case, accused was charged with peddling buggies, and the evidence showed that he carried one or more buggies with him, traveling about the country, and sold the particular buggies, and, in some instances, took orders for the sale of other buggies. In Emert's case, supra, owing to the fact that accused sold the article he carried with him, he was held to be a peddler, although he took orders for the sale of other articles of the same kind to be delivered in the future. But here we have a case in which no sale of the property in hand occurred. In every instance an order was taken for future delivery. This would constitute the party a drummer as contradistinguished from a peddler. For a thorough review of the authorities as to what is or is not a peddler, see Emert v. State, supra A peddler is an itinerant vendor of goods who sells and delivers the identical goods carried with him. He who sells by samples, taking orders for future delivery, to be paid for wholly or in part upon subsequent delivery, is not a peddler. State v. Lee, 113 N. C., 681; State v. Gibbs, 115 N. C., 700; Ballew v. State, 87 Ala., 144. In the case of Emmons v. City of Lewiston, 132 Ill., 380, we find this language: "This list of definitions might be extended almost indefinitely, but enough has been given to show both the legal and popular meaning of the words 'hawker and peddler.' It has never been under-

45 Crim.—4.

stood either by the profession or the people that one who is ordinarily styled a drummer, that is, one who sells to retail dealers or others by sample, is either a hawker or peddler, and the same is true in respect of persons who canvass, taking orders for the future delivery of books, periodicals, or other publications." See, also, State v. Morehead, 26 Law. Rep. Ann., 585; Commonwealth v. Farnum, 114 Mass., 267. From the latter case we quote: "We think the jury should have been instructed that the defendant was not liable. He was an agent soliciting orders and a carrier delivering the machines ordered. He made no direct sales himself. He did not carry and expose goods for sale within the meaning of the statute, and his acts did not come within the mischief the statute is intended to prevent. The article which he carried was a sample of that he proposed the purchaser should buy of the company." In re Wilson, 112 Law. Rep. Ann., 624, we find this language: "Of course this only applied to persons who offered for sale, whether the offer was made by sample or by catalogues or otherwise, and had no reference to those who sold and delivered the goods at the time of the sale. Such persons are known as drummers who solicit orders by exhibiting samples or by catalogues or in any other way, and not those who actually sell and deliver the goods at the same time, as peddlers do and as Wilson was doing." We are cited to Wrought Iron Range Co. v. Johnson, 8 Law. Rep. Ann., 273, and Duncan v. State, 30 S. E. Rep., 755. Under the Georgia statute, the ordinary definition of peddler was very much enlarged from what is commonly understood, and the article under which the decisions were rendered was in part as follows: "Every peddler or itinerant trader by sample or otherwise must apply to the ordinary of each county where he may desire to trade, for a license," etc. It will be observed that this statute did not confine the tax simply to peddlers, but it went further and comprehended "itinerant traders by sample or otherwise." Our statute is restricted by its language to tax on peddlers. A review of the authorities will disclose the fact that a difference or distinction has always been observed between peddlers on one hand and drummers or commercial travelers on the other. 132 Ill., 380; 34 Kan., 434; 58 Miss., 478. In cases of the character under consideration, under all of the authorities that have come under our observation, where the statutory language is as ours, the party has been held to be a drummer or commercial agent and not a peddler. In those cases where the party sells and at the same time delivers, he has been held to be a peddler, although he may, at the same time, take orders for future deliveries. 156 U. S., 296; 63 S. W. Rep., 568. In this particular case the "sample man," as he is termed, made no deliveries, but simply took orders for future deliveries; and these deliveries were subsequently made by other parties. But it would make no difference, as we understand the authorities, whether the subsequent deliveries were made by the sample men or the delivery men. Be that as it may, there were no such sales made as to constitute any of the parties peddlers within the contemplation of the law; consequently, they were not within the terms of the

statute. Therefore we are of opinion that the facts do not sustain the conviction. While this may have been, and doubtless is, an ingenious way of avoiding and evading the terms of the statute, still appellant has carefuly avoided constituting himself a peddler, and is not within the denunciation of the law. Hence the court was in error in peremptorily ordering conviction, and in holding the evidence sufficient to support the conviction; and because the information is insufficient, the judgment is reversed and the prosecution ordered dismissed.

*Reversed and prosecution dismissed.*