## UPCHURCH *v.* CITY OF LAGRANGE *et al.*

1. Where a person travels from city to city or town to town in this State, exhibiting samples and taking orders which are sent in to the place of business or distributing point of the dealer where such orders are filled and sent to the purchaser, the sale and delivery not being one transaction. whether the purchaser is a retail or a wholesale dealer or a consumer, the salesman is not a peddler, but a traveling salesman. Under the facts of this case the business of the petitioner was that of a traveling salesman, and not a peddler. Accordingly he was not taxable under a municipal ordinance imposing a tax upon persons peddling merchandise on streets or from house to house; and the court erred in refusing to enjoin the municipality and its officers from enforcing the peddling ordinance as against the petitioner. ·

2. Under the evidence the effort to enforce the tax against the petitioner on the theory· that his method of conducting business was a subterfuge can not be upheld.

3. The general rule is that a court of equity will not interfere with a prosecution for violation of a penal ordinance. Where, however, as in this case, there were threats of continued prosecution to destroy the

right to transact business unless the tax should be paid, the case falls within the exception to the general rule.

No. 4332. OCTOBER 16, 1924.

Petition for injunction. Before Judge Roop. Troup superior court. March 11, 1924.

Carter, an agent of Upchurch, was fined $25 in the recorder's court of the City of LaGrange, for violation of the following portion of the ordinance of the city imposing taxes, to wit: "Peddling on streets or from house to house merchandise or articles of any description, except agricultural products. This is intended to include trucks, wagons, or vehicles, selling and delivering any kind of merchandise or articles of food from store to store or house to house, for each person $200.00." Upon the imposition of the fine Carter gave notice of his intention to carry the cause by certiorari to the superior court within the time allowed by law. Immediately after the conclusion of the trial in the recorder's court the chief of police of the City of LaGrange caused another case to be placed on the docket of the recorder's court, charging said Carter with the same offense. Upchurch filed a petition against the City of LaGrange and its chief of police, and alleged, in addition to the facts above stated, that said Carter, the representative of petitioner was, within the meaning of the Civil Code (1910), § 868, a travelling salesman, and exempt from taxation by any municipality, that said representative "is engaged in the business of selling goods for petitioner, and travels from town to town by automobile truck and takes orders for merchandise, and then subsequently delivers the same;" that petitioner has built up among the merchants of LaGrange a valuable trade, and makes considerable profit by reason of selling merchandise to them; that the chief of police of the City of LaGrange has informed petitioner of his purpose to continue to prosecute, under said ordinance, Carter and any other agent or representative of petitioner whom he finds delivering goods from automobile trucks; that petitioner is being hindered, handicapped, and prevented from exercising his property rights by reason of said prosecutions and threats, and that he is without an adequate remedy at law. The prayers are, that the defendants be restrained by injunction from arresting or molesting Carter or any other agent or representative of petitioner engaged in taking orders for merchandise from the mer-

chants of LaGrange and subsequently delivering the same, and. from further prosecuting the case pending in the recorder's court against Carter; for rule nisi and process.

Upon the interlocutory hearing the petitioner testified: "that one of affiant's salesmen goes to the City of LaGrange on Tuesday and Friday of each week; that the said salesman travels in automobile truck owned by deponent, in company with another man who operates the truck and unloads the goods sold to the merchants; that the said salesman, namely, A. C. Carter, takes orders from the merchants of LaGrange for any. goods any particular merchant desires, but makes no delivery of the goods at the time of taking the order for same; that he takes the order given by the merchant to the place of business of deponent in East Point, and the goods are then shipped from deponent's place of business on the next trip of 'the truck to LaGrange, orders that are given on Tuesday being delivered on the following Friday, and orders that are given on Friday are delivered on the following Tuesday, but no goods are delivered at the time of sale; that his said travelling salesman travels from town to town and takes orders from the retail merchants." Carter testified that "his business is to call on the retail merchants in said towns and take orders for the products sold by said W. F. Upchurch at wholesale price; that he does not sell any goods at retail; that no deliveries of goods are made in the City of LaGrange at the time of making the sale and taking the order therefor; that he visits the town of LaGrange on Tuesday and Friday of each week, and takes orders from retail merchants engaged in business there; that shipment of the goods is made on Tuesday of each week on the orders given on the previous Friday and shipments are made on Friday on orders given on the previous Tuesday; that he has not at any time during the year 1924 made a single sale of any article of merchandise whatsoever and delivered same at the time of making sale; that he travels from town to town as aforesaid by automobile truck; that he is accompanied by a man who operates the truck and actually delivers the goods to the merchants of LaGrange on their orders previously given; that affiant's business is to take orders only, and the orders are carried by him to the place of business of said W. F. Upchurch and subsequently shipped by automobile truck, express or freight." The chief of police of the City of LaGrange

testified: "that prior to the time that a license tax of $200.00 was fixed by the mayor and council of LaGrange the plaintiff peddled truck loads of meat market and food products in LaGrange, Georgia; that since said ordinance was passed the same representative of plaintiff has been coming to LaGrange with truck loads of meat market and food products, and delivering same from said truck from store to store in LaGrange, Georgia; that the only purpose in making the change they claim to have made with reference to taking orders, he heard both the plaintiff and A. C. Carter say, was for the purpose of avoiding the payment of a license tax in LaGrange, and that plaintiff's business is in all respects and manner as it was being conducted before the said ordinance was passed; that the general method of conducting the plaintiff's business has not been changed."

The court rendered the following opinion and order: "Under the evidence submitted, I think that plaintiff's agent is a peddler within the meaning of the ordinance complained of. I do not think he is a travelling salesman within the meaning of section 868 of the Code, and as construed in 105 *Ga.* 694 (3), and 120 *Ga.* 192. I think the taking of orders was only incident to the main business of peddling and delivering goods in the City of LaGrange, was not shown to be incidental to the main business of plaintiff's agent, to wit, selling, delivering and collecting all at the same time from a truck. I am of the opinion that plaintiff can not do business in LaGrange in the manner shown by the evidence, without paying license as prescribed by the ordinance. The court does not mean to hold that the plaintiff may not do business in the City of LaGrange in a manner so as not to be liable for the license prescribed by the ordinance. The city can not levy or collect any tax or license from a travelling salesman of plaintiff, engaged in taking orders for the sale of plaintiff's goods, where no delivery of goods is made by said salesman at the time of taking the orders. In other words a travelling salesman, whether he travels by railroad, truck, or Ford, must be a travelling salesman within the meaning of section 868 of the Code. The court is also of the opinion that it is immaterial whether such salesman travels by himself or in company with other employees of plaintiff. Wherefore it is ordered and adjudged that the restraining order heretofore passed be and the same is hereby dissolved. However, the de-

fendants are restrained from interfering, by prosecution or other-wise, with any travelling salesman, within the meaning of section 868 as above expressed, whom the plaintiff may send into the City of LaGrange." Upon this judgment error was assigned.

Parker & Patterson, for plaintiff.  L. B. Wyatt, for defendants.

GILBERT, J. 1. The main question is whether the facts shown in the record place the petitioner within the class of persons taxable under the city ordinance quoted in the statement of facts.  The city ordinance taxes "peddlers."  It is not intended to cover what is ordinarily known as "travelling salesmen."  Under the Georgia statute the city has no power to tax such "travelling salesmen" as fall within the provisions of the Civil Code (1910), § 868.  The legal distinction, with reference to taxation, between a "peddler" and a "travelling salesman" is sometimes exceedingly indistinct. This fact has given rise to decisions which so shade into one another that in some instances it is difficult to reconcile seeming conflicts.  On the subject of what constitutes peddling, 21 R. C. L. 183, §§ 4, 5, contains the following statement: "It is fundamental that no one may be a peddler who does not go from place to place seeking sales.  There must be movement by the peddler.  There-fore a corporation can not be a peddler.  And it seems to be the American rule that one who sells from a fixed stand which he from time to time moves for business purposes is not a peddler, though in England this is probably sufficient itineration.  Then, certainly in the United States, and probably in England, there is a difference between a 'peddler' and an 'itinerant merchant,' and care must be taken not to fall into the error of regarding the words as synonymous.  However, the fact that a merchant has a fixed place of business does not render it impossible for him to become a peddler by means of sales made away from that place of business, and definitions of peddlers as persons without local habitations or places of business enumerate ordinary rather than necessary attributes.  Further, the traveling by the peddler must be for the purpose of seeking sales.  The actual canvass, either by voice or symbol, for sales is a necessary element, and it has been held that the delivery of goods which have been ordered is not peddling even though the price of the goods was not fixed until delivery.  But the itinerant seeking of sales is peddling, even though the sales be made to regular customers.  In addition, to

constitute peddling, the dealings must be with consumers, for it is settled that dealings with retailers is not peddling. This is historically justifiable, for when the term originated there probably were no itinerant salesmen selling to retailers alone goods which they carried with them. Furthermore, it is a logical qualification of the definition. In all the cases the necessity of finding a meaning for the word "peddler" arose from the necessity of interpreting a statute or ordinance containing it. The legislative body using the word was dealing with a mischief. The natural and proper interpretation of the words used would be such as to make them cover just the mischief aimed at, and none other. It is obvious that retail dealers, trained merchants, were imposed on in no such way as were householders, or ordinary consumers. Hence, those modern itinerants selling to retailers alone needed no such regulation as peddlers did, and were not held to be peddlers. It is another necessary requisite of peddling that the delivery must be made at the time of sale; the sale and delivery must be one transaction. The authorities are almost unanimous in holding that a person who solicits and obtains orders for goods by the display of samples, and delivers none of the goods at the time of sale, is not a peddler." Citing Emmons v. Lewiston, 132 Ill. 380 (24 N. E. 58, 8 L. R. A. 328, 22 Am. St. R. 540); State v. Lee, 113 N. C. 681 (18 S. E. 713, 37 Am. St. R. 649, and note); State v. Frank, 130 N. C. 724 (41 S. E. 785, 89 Am. St. R. 885, and note); State v. Morehead, 42 S. C. 211 (20 S. E. 544, 46 Am. St. R. 719, 26 L. R. A. 585, and note); Potts v. State, 45 Tex. Crim. 45 (74 S. W. 31, 2 Ann. Cas. 827). We think the quotation from section five, to the effect that the sale and delivery must be one transaction, is especially important and significant. It will afford a means of distinguishing the "peddler" from the "travelling salesman" in many cases where the two methods of doing business are so nearly the same that it becomes otherwise almost impossible to point out a distinction. In the present case the evidence is without conflict to the effect that the salesman did not make delivery of any of the goods at the time of the sale. In other words, sale and delivery did not constitute one transaction. The case of Price v. Atlanta, 105 Ga. 358 (31 S. E. 619), involved the question of whether the petitioner was liable as a peddler under an ordinance of the City of Atlanta similar to the ordinance of

LaGrange now under consideration. The petitioner insisted that his method of doing business was such as to fall within the provisions of the statute of 1896 (Civil Code (1910), § 868), which prohibits municipal authorities from collecting any tax or license from a traveling salesman. In that case Mr. Justice Little elaborately discussed the term "traveling salesman," and showed that the petitioner was not a traveling salesman. There the petitioner, in order to facilitate his business, had, in the City of Atlanta, a warehouse or distributing point, and orders were brought in or sent in by those taking them, and they were filled from this warehouse or distributing point. The soliciting agents went from house to house in the City of Atlanta, the sales being restricted to the one City of Atlanta. The court said: "The term 'traveling salesman' used in that act [1896] means to include only that class of persons engaged in selling goods either by sample or otherwise, who travel on this business from city to city and from town to town, and whose business relations are connected with those who in such cities or towns are likewise engaged in business which contemplates a resale of the goods sold, or consumption in large quantities. The provisions of that act do not contemplate another and entirely different class of persons who, in a given town, city, or county, go from house to house in their effort to take orders for goods. The latter are canvassers, not traveling salesmen, and are not embraced within the terms of the act of 1896." *Kimmel* v. *Americus,* 105 *Ga.* 694 (31 S. E. 623), was a case where a person was tried and convicted "for violating license ordinance and peddling in the City of Americus, Ga., without license." The ordinance under which the trial was had placed a tax on transient traders and dealers in certain specified articles at retail. It appeared that the defendant was engaged in going from house to house in the City of Americus, carrying samples of curtains and rugs and taking orders for such goods, which were filled by the L. B. Price Co., Kansas City, Mo., which the agent represented, and that he never sold nor offered for sale any of the goods which he carried with him as samples. The only evidence in the slightest degree contradicting the facts just stated was that of the witness for the prosecution tending to show that the defendant came to her house and sold her a curtain which he carried with him, or one which he at least had in Americus at the time he took an order

from her. The last-stated evidence, under the ruling of this court, did not affect the main question decided. This court held that the evidence failed to show that the defendant was a peddler within the meaning of the word "peddlers" in the municipal ordinance in question. This case is also authority for the ruling: "We can not see that it makes any difference whether the person who goes from town to town taking orders for goods deals only with merchants or large consumers, or takes orders only from very small consumers. In either case we think he is a travelling salesman, within the meaning of the term as employed in this act" above cited. The third headnote in the *Kimmel* case is as follows: "An agent of a firm or corporation who goes from town to town in this State, exhibiting samples of goods and taking orders on his employer or employers for such goods from consumers, is a 'travelling salesman,' within the meaning of the act of December 14, 1896." Construing the last two cases cited above together with the general rule stated in Ruling Case Law, we conclude that where a person travels from city to city or town to town in this State, exhibiting samples and taking orders which are sent in to the place of business or distributing point of the dealer, where such orders are filled and sent to the purchaser, the sale and delivery not being one transaction, whether the purchaser is a retail or wholesale dealer or a consumer, the salesman is not a peddler, but is a traveling salesman. In such a case a municipality in this State is prohibited from levying a tax on such salesman, and an ordinance levying a tax upon peddlers is not applicable. No question as to the validity of the ordinance on constitutional or other grounds is involved in the case. The sole question is whether the business carried on was of such a character as to fall within the provisions of the city ordinance taxing peddlers. Under the facts of the case neither the salesman nor his principal was liable to the tax, and the court erred in refusing to grant an injunction as prayed.

2. It is insisted by the defendant municipality that the method of conducting business by the defendant was a mere subterfuge or evasion, and that therefore the refusal of an injunction was not erroneous. In *Duncan* v. *State*, 105 *Ga.* 457 (30 S. E. 755), this court had under consideration a similar contention, and there the contention was upheld by a divided court. In the second head-

note of the *Duncan* case it was held: "When one person travels through the country as an itinerant, exhibiting samples of goods and taking orders for goods of like character, and another follows in his wake delivering the goods thus sold, both should be regarded as peddlers when it appears that the business was thus conducted in pursuance of a scheme to evade the law of this State requiring peddlers to register and pay taxes." After considering the only testimony bearing upon this contention set out in the statement of facts, we do not feel authorized to hold that the refusal of the injunction could be placed upon this ground. A proper construction of the evidence leads us to the conclusion that the petitioner was merely seeking to conduct his business on a plan which would relieve him from paying the tax, and that he adopted a plan which, as a matter of law, did not come within the provisions of the municipal ordinance. This he had a right to do. The mere fact that he changed the method of conducting business in some details for the express purpose of relieving himself from the tax does not constitute a subterfuge which would authorize levying a tax on that ground as contended.

3. It is also contended that the case falls within the rule that equity will not interfere by injunction with the prosecution for the violation of a penal ordinance. The general rule is that a court of equity will not interfere with such a prosecution. *City of Bainbridge* v. *Reynolds,* 111 *Ga.* 758 (36 S. E. 935); *Jones* v. *Carlton,* 146 *Ga.* 1 (90 S. E. 278). It appears, however, in this case that there were threats of continued prosecution to destroy the right to transact business, unless the tax should be paid. We think that the case falls within the exception to the general rule, because unless restrained the petitioner had no adequate remedy. It follows that the judgment refusing an injunction must be reversed.

*Judgment reversed. All the Justices concur.*