## SIMON *vs.* CITY OF ATLANTA.

1. The primary purpose of a street is for passage and travel, and any unauthorized and illegal obstruction of its free use comes within the definition of a nuisance; and such obstruction as would leave the street or way in an unsafe condition or impair its use in an unreasonable manner or for an unreasonable time, would render the city liable for any damage resulting therefrom.

2. But the right of the public to use a street is subject to such reasonable and necessary limitations as the city may impose upon it. Therefore, so long as an obstruction placed upon a street is temporary and reasonable in its character, and is intended for the public safety and convenience, its existence furnishes no cause for complaint.

3. A good fire department is both necessary and useful to a city, and its efficiency is promoted by parades and practice. Hence to temporarily obstruct passage by stretching ropes across a street during a parade or practice of the fire department, does not furnish any ground for damages against a city.

Municipal Corporations. Damages. Negligence. Nonsuit. Before Judge HILLYER. Fulton Superior Court. April Term, 1881.

Reported in the decision.

S. A. Darnell; George S. Thomas; T. P. West-
moreland, for plaintiff in error.

W. T. Newman, for defendant.

Speer, Justice.

Plaintiff in error brought his suit against the city of
Atlanta for ten thousand dollars damages alleged to have
been sustained for personal injuries done him by reason of
the fault and wrongful act of defendant.

The declaration alleges "that by an act of the general
assembly of 25th February, 1874, the city of Atlanta has
the control and supervision of the streets thereof, and the
needed authority to keep said streets and public places free
from obstruction, and to prevent the improper use of said
streets and public places; but that the defendant had no
authority conferred by law to allow ropes or other obstruc-
tions to be placed in said streets. Nevertheless, said de-
fendant wrongfully and unlawfully permitted and allowed
both sides or ends of Broad street in said city, at a point
where it crosses Marietta street at right angles, to be ob-
structed by ropes stretched across said Broad street, thus
incommoding and endangering the community, and that
petitioner passing along said street on his usual business
on a wagon, then and there by reason of said ropes so
stretched across said street at said crossing, was violently
thrown from said wagon on the ground with great force and
violence, thereby fracturing his collar bone and seriously
and permanently injuring him internally, producing hernia
or rupture, etc.; wherefore he brings suit;" etc.

On the trial of the case, the plaintiff submitted in sub-
stance the following proof: Plaintiff being sworn said:
Was 42 years of age; resided in Atlanta, and was residing
here 6th May, 1878; was employe of the Atlanta city
brewery to deliver beer to the city customers of said com-
pany; was so engaged on morning of 6th May, 1878; was

v 67—40

driving beer wagon along Broad street with beer for customers on south side of railroad; desired to cross railroad on Broad street bridge as the safest and most direct route; on approaching Marietta street which crosses Broad street at right angles, noticed Broad street was blocked by a crowd of people, and ropes were stretched across the street from the building on one corner to the other, on both the north and south sides of Marietta street where it inter-sected and crossed Broad. Saw several of the Atlanta police in the crowd on both sides of Marietta street in immediate vicinity of the ropes. Stopped my wagon; some one in the crowd told me to come on, that the ropes would be raised for me to pass under; drove on, passed under the rope on the north side of Marietta street safely, and crossed Marietta street, reached the south side; the rope across was there raised, and while I was passing under it the rope either fell or was lowered so that it struck me, and by it I was dragged and thrown violently off the wagon and seriously and permanently injured as alleged. Witness said there was a firemen's parade and exhibition in the city of Atlanta on that day. Cannot say whether any of the policemen held the rope at time I was injured.

Dr. Westmoreland testified as to the extent of the injuries the plaintiff had received on the day of the fireman's parade; and also plaintiff introduced the Northampton tables to prove the reasonable expectation of life of one of plaintiff's age, and closed.

Defendant moved a non-suit, on the ground that the city had the right to obstruct its streets by ropes, etc., on the occasion of the public parades and drills of the firemen of the city, and that, even if this were not so, that the plaintiff was at fault in attempting to pass the obstructions, and the city was not liable; which motion for non-suit was allowed by the court, and plaintiff excepted.

It is insisted by the defendant in error that there was no evidence showing that the ropes constituting the obstructions complained of were shown to have been placed there

by authority or permission of the city, and that the presence of police officers there near the ropes, even if they were at fault in not at once removing said ropes, does not render the city liable for the default or misconduct of its officers, as has been ruled in 54 *Ga.*, 468; 62 *Ga.*, 299; *Rivers vs. City of Augusta*, decided at September term, 1880. But taking it for granted, and from the evidence it may be well presumed, that the ropes across this street (in view of the firemen's public parade) were placed there by the city as a measure of temporary precaution, to guard against any encroachment upon the drill and parade of the fire department of the city that day,—the question is, did the city have the right under the circumstances thus temporarily to obstruct the streets; for this is the proposition denied by plaintiff in error, and upon it he bases his right for damages, since this is the sole ground alleged upon which he seeks to recover.

We recognize the doctrine so earnestly contended for by counsel for plaintiff in error, that streets and public places belong to the general as well as the local public; and that if the control and general supervision of streets is conferred by the legislature upon the municipality, such a corporation holds them in trust for the convenience and use of the public at large, and it becomes its duty not only to keep them in safe and suitable condition for the passage of persons and transportation of commodities, but the duty also devolves upon it of keeping them free from any such unauthorized obstructions as may permanently or unreasonably interfere with their public use and enjoyment; and if necessary for this purpose in its corporate name it may institute judicial proceedings to prevent or remove obstructions thereon. Of course this power of the municipality is conferred by charter, and limited by and dependent upon the legislative grant that confers it. Usually this power is conferred in such general terms that it may be well said that municipalities in our state generally have the authority to open, care for, regulate and improve their

streets, and when taken in connection with other powers, have all necessary authority to keep the streets free from obstructions, and to prevent the improper use of the same, and to pass such ordinances as will effectuate such an end. But with reference to streets in populous places, the public convenience will require more than the mere right to pass over them.  It may be necessary to grade them to a level ; for this purpose the corporation may cut down trees, dig up the earth and use it in improving the street there or elsewhere ; may make sewers, culverts and drains upon or under the surface, and do all such acts as are appropriate or incidental to the beneficial use of the streets by the public.

The primary purpose of a street is for passage and travel, and any unauthorized and illegal obstruction to its free use comes within the legal notion of a nuisance, and any such nuisance as would leave the street or way in an unsafe and dangerous condition, or impair its use in an unreasonable manner, or for an unreasonable time, would make the city liable for any damage resulting therefrom. 2 Dillon, 722.

But it is not every obstruction, irrespective of its character or purpose, that is illegal, although not sanctioned by express legislative or municipal authority ; on the contrary, the right of the public to the free and unobstructed use of a street or way is subject to reasonable and necessary limitations.   The carriage and delivery of fuel, grain or goods are legitimate uses of a street, though it may result in the temporary obstruction of the right of public transit ; so the improvement of the street, the digging of cellars on adjacent lots for building, etc., are not invasions of the public easement, but simply incidents to or limitations on it.   They can be justified when, and only so long as, they are reasonably necessary.   There need be no absolute necessity ; it suffices if the necessity is a reasonable one. The right temporarily to obstruct a street springs from reasonable necessity, and is limited by it, and those who

exercise the right must so conduct themselves as to discommode others as little as is reasonably practicable, and remove the obstruction or impediment within a reasonable time, having regard to the necessities and circumstances of the case; and when they have done this, the law holds them harmless   51 Me., 264, 297; 67 *Ib.*, 46; 24 Am. Rep , 437. That so long as the alleged obstruction is for the public convenience there can be no reasonable ground of complaint, was held in the case of King *vs.* Russell, 6 B.& C., 566; but the extent of this principle has been since questioned.   It is, however, a safe and reasonable rule to declare, that so long as the alleged obstruction is temporary and reasonable in its character and is intended for the public safety and convenience, it is no cause of complaint. Admitting that the obstructions here complained of were placed there for the public safety and convenience, to guard the drill and procession of the firemen's parade from intrusion and interruption, it would, so far from being illegal and a nuisance for which the city should respond in damages, be on the other hand a wise and prudent forethought and provision to guard the public from collision and preserve the order and discipline of the procession.   An efficient fire department in a city like Atlanta is absolutely essential to the safety of life and property.   Its efficiency depends upon its drill, discipline and the proper condition of its implements used in extinguishing fires.   These are best subserved by drills, parades and the practical use of their engines.   These drills, parades and use of their machinery can only be had in the public thoroughfares, and if it be necessary temporarily to keep these thorough. fares open by rope obstructions or otherwise temporarily stretched, and thus closing certain streets leading to them, it is one of those limitations upon the use of public streets and the right of transit thereon to which the public must yield, since the public at large are in the results its beneficiaries.   It was but a temporary and reasonable obstruction under the evidence, erected for the convenience and

safety of the public, for the promotion of a system in which the public .interest was vitally concerned. As the stretching of these ropes across Broad street was, under the evidence, the only complaint against the city, without discussing the palpable fault on the part of the plaintiff that led to his injury, we think that there was no case made against the city in behalf of the plaintiff, and the non-suit awarded was right.

Let the judgment of the court below be affirmed.