HEILBRON *et al. v.* THE MAYOR & COUNCIL OF CUTHBERT.

1. It is within the power of the Mayor and Council of Cuthbert, under the charter of that city, upon complying with all the requisite constitutional and legal provisions, to contract a debt for the construction and maintenance of water-works and an electric light plant, and to issue bonds for this purpose.

2. It was not necessary to publish the ordinance, or resolution, by which the mayor was authorized to order an election to be held

upon the question whether or not such bonds should be issued, provided the notice required by law was duly published.

3. Although the published notice that the election would be held specified a larger amount of bonds than the city authorities could constitutionally issue, yet as the petition for injunction did not present the question whether or not the notice was for this reason illegal, the mere fact that the proposed issue of bonds as stated in the notice would have been unconstitutional did not require an injunction restraining the municipal authorities from issuing bonds to a lesser amount, and within the limit fixed by the constitution.

4. It will be lawful to make the proposed bonds "payable in gold, or lawful money of the United States, at the option of the holder."

5. Under the act of August 24, 1872, requiring registration by the voters of the city of Cuthbert, a special registration for the bond election in question was not requisite. For no reason stated in the petition for injunction, or appearing in the agreed statement of facts, does it appear that the proposed issue of bonds to the amount specified in the judge's order would be illegal.

April 15, 1895.

Petition for injunction. Before Judge GRIGGS. Randolph county. March 18, 1895.

The injunction was sought to prevent the issuing and selling of bonds for the erection of water-works and electric lights for the city of Cuthbert. The court denied the injunction, save as to the issuance of any bonds in excess of $36,000, or seven per cent. of the taxable property of the city. It appears that the mayor and council passed an ordinance authorizing the mayor to call an election for the purpose of submitting to the qualified voters of the city the question whether $10,000 in bonds for the establishment of an electric light plant, and $40,000 in bonds for the establishment of water-works, or so much thereof as might be deemed necessary in each case, should be issued. The ordinance provided that the election should be held at the usual place, and under the same rules as in elections for mayor and councilmen, except that no registration should be required; that all persons residing within the corporate limits, who were qualified to vote for members of the General Assembly, should be entitled to vote in said

election.   The ordinance further designated how ballots should be prepared; also, the denomination of each bond ($1,000), the rate of interest (6 per cent. per annum), payable semi-annually, and that the whole issue should mature within thirty years; "principal and interest due on said bonds to be paid in gold or lawful money of the United States at the option of the holder." The mayor prepared a written notice of the election, setting forth the terms of this ordinance; and the notice was published for more than thirty days prior to the election.   There was no publication of the ordinance authorizing the mayor to call the election.   No registration for the election was had, but no qualified voter was prevented from voting, and all qualified voters in the city were permitted to vote.   The election was in all respects regular and in pursuance of the published notice. More than two thirds of the qualified voters of the city, as shown by the tally-sheet and registration for the last general election, voted for bonds.   The mayor and council thereupon passed an ordinance declaring the result of the election, providing for the issuance of the bonds, appointing the mayor and three members of the council as commissioners to sell them, make contracts and erect the plants; also, declaring the amount of the bonds to be issued as $40,000 in denominations of $1,000 each, the whole issue to mature on July 20, 1920, bearing interest at six per cent. per annum payable on the first days of January and July, and when and where the principal and interest should be due and payable.   This ordinance further provided, that all revenues arising from the operation of the water-works and light plant should be applied, first to the expenses of their operation, then to the payment of interest on the bonds, and then to constitute a part of the sinking fund for their redemption; and further, that there should be set apart each year by the mayor and council, as a sinking fund for the redemp-

tion of the bonds, one half of the revenues of the city derived from licenses for the sale of spirituous or malt liquors, and in the event that the sum so realized should not amount to $1,000 after the payment of interest, then there should be levied and collected each year an *ad valorem* tax on the taxable property of the city, in a sum sufficient to make $1,000 after the payment of all interest on the bonds. It was admitted at the hearing, that the taxable property of the city for the year 1894 was $526,000, as shown by the tax-digest; and that the mayor and council did not intend to issue bonds for an amount in excess of seven per cent. of said taxable property. In the answer of the mayor and council it is stated that the total indebtedness now outstanding against the city is not over $800; that it will not require the issuance of more than $35,000 to erect the water-works and light plant, and the mayor and council do not intend to create any debt for more than that sum. The grounds of the petition for injunction appear, in substance, in the opinion.

W. C. WORRILL, by brief, for plaintiffs.

ARTHUR HOOD, by HARRISON & PEEPLES, for defendants.

LUMPKIN, Justice.

1. Under the 9th section of the charter of the city of Cuthbert (Acts of 1859, p. 149), the mayor and council of that city have authority to "contract and be contracted with; sue and be sued; . . and . . do all things for the benefit of the city, and all things not in violation of the constitution and laws of this State." It is apparent, therefore, that the "general welfare clause" in this charter is very broad and liberal in its terms. That the erection and maintenance of water-works and of an electric light plant would result in benefit to the city, is obvious. It was insisted, however, that in order to authorize a municipal corporation to contract a debt

for improvements of this kind, the power to do so must
be expressly conferred by the charter.     We do not con-
cur in this view.     In Tiedeman on Municipal Corp.;
§119, it is said "that, on the ground that plenty of water
is necessary to the preservation of the public health, it
was held that a city, under its power to pass police ordi-
nances and ordinances to preserve health, could contract
for an artesian well to be bored on its own land"; and
numerous cases are cited in support of the text, among
them, *Mayor & Council of Rome* v. *Cabot*, 28 *Ga.* 50. The
same author, in section 130, says:     "So, also, although
it is the subject of an express grant of power, a municipal
corporation may, under the general welfare clause alone,
coupled with the implied power inherent in all corpora-
tions to make fit and appropriate by-laws, and without
any express legislative grant of power, establish limits
within which the erection of wooden buildings shall be
absolutely prohibited, and make other regulations which
are deemed necessary to prevent fires." If the power to
establish fire limits and prescribe the character of build-
ings which shall be erected within the same is derivable
from a "general welfare clause" in a city charter, it
would seem, on principle, that the power to provide for
an adequate water supply, and for lighting the streets,
squares and public buildings of a city, would in like
manner result from such a clause.     See the authorities
cited in a note to the section from which the above quo-
tation is made.     But independently of what may be re-
garded as the rule upon this subject prevailing else-
where, we think the question in hand has been definitely
settled in this State by decisions of this court. The case
of *Mayor & Council of Rome* v. *Cabot, supra,* is directly
in point as to contracts for the construction of water-
works; and the principle upon which the case rests is
certainly broad enough to embrace contracts for the
erection of light plants.     This case is cited approvingly

in *Wells et al.* v. *Mayor & Council of Atlanta et al.*, 43 *Ga.* 76, and in *Adams et al.* v. *Mayor & Council of Rome*, 59 *Ga.* 768. See, also, *Ford* v. *Thralkill et al.*, 84 *Ga.* 169, which was a "fire limit" case.

2. Section 508(i) of the code does not require the publication of the ordinance or resolution adopted by a municipal corporation, authorizing the mayor to order an election upon the question of issuing bonds for the purpose of making public improvements within the city; but does provide that notice of such election shall be given by publication. If the notice required by this section is duly given, no other or further publication is requisite. In the present case, the notice published was, so far as relates to any objection to it with which we are called upon to deal, sufficient.

3. It was insisted in the argument for the plaintiffs in error, that the published notice of the election to be held in Cuthbert for the purpose stated, specified a larger amount of bonds than the municipal authorities could constitutionally issue in any event. Be this as it may, the petition for injunction presented no such objection as this to the legality of the notice; and therefore, even if the proposed issue of bonds as stated in the notice would have been greater than the constitution authorizes, the trial judge was not, for this reason, necessarily constrained to grant an injunction restraining the issue of bonds to a lesser amount and undoubtedly within the constitutional limit. If the point insisted upon here was meritorious, it ought to have been made in the petition presented to the trial judge.

4. No reason now occurs to us, nor was any stated, why it would be unlawful to make the proposed bonds "payable in gold, or lawful money of the United States, at the option of the holder."

5. The act of August 24th, 1872 (Acts of 1872, p. 186), by its title professes to be an act to require the reg-

istration of the voters of the city of Cuthbert "sixty days before the annual municipal election." In the first section of the act, it is declared that "the voters who may desire to vote at the annual municipal election, and at any other election ordered by the council of the city of Cuthbert, . . shall, before they shall be entitled to vote at said election, have registered their names with the city clerk at least sixty days before the day on which the said municipal election is held." In the third section, the act provides that "after the registration provided for in the first section of this act, the person so registering shall be entitled to vote at any election that may be ordered during the current year by the mayor and council of said city." In so far as the body of the act deals with any election other than the annual municipal election, it seems to cover matter not embraced within its title; but it is perfectly immaterial whether the provisions of the act with reference to elections other than the annual municipal election are valid or not. If they are valid, one who registered for the annual election would, by the express terms of the act, be entitled without further registration to vote at an election upon the question of issuing bonds. If the provisions referred to are invalid, then there is nothing in the act requiring a special registration to be had for an election relating to bonds.

No valid reason is stated in the petition for injunction, or appears in the agreed statement of facts, for enjoining the mayor and council from issuing the proposed bonds to the amount specified in the judge's order.

*Judgment affirmed.*