### ROBINS et al. v. McGEHEE, mayor, et al.

1. A street is a road or public way in a city, town, or village, laid out and opened for travel by the public.
2. Any obstruction of a public street in a town or city is a public nuisance.
3. The municipal authorities of a town or city may, on complaint of a citizen, cause an obstruction to be removed from any public street in actual use by the public.
4. The rationale of the principle that an obstruction in a street may be summarily abated is upon the theory that the obstruction of a street in use by the public is a nuisance.
5. Where a street exists only in the plan of a town or city, and has not been actually opened, worked by the municipal authorities, and used by the public, but on the contrary has been in private occupation for forty years, this mode of procedure is not available. And this is true notwithstanding the city owns in fee simple the land designated in the plan as the place where the street is to be located.

Submitted July 18, 1906.—Decided February 14, 1907.

Petition for injunction. Before Judge Little. Talbot superior court. May 10, 1906.

An equitable petition was filed by Mary Robins against the Town Council of Talbotton and E. H. McGehee, as mayor of that town, to restrain the municipal authorities from removing a fence which they asserted was an encroachment on Monroe street. She alleged, that she was the owner of the land on which the fence stood, and had been in the quiet and undisturbed possession thereof, under written conveyances, for over thirty years; that it was the purpose of the defendants to remove the fence and confiscate a portion of her land in laying out a street which had not previously been opened, used, dedicated to the public, or conveyed to the town, and that the defendants were without authority of law to summarily condemn her land in order to open up the proposed street through it. The defendants by their answer set up the contention that the plaintiff's fence encroached about forty feet on Monroe street, the title to which was vested in the town at the time it was incorporated in 1828, and that the street was then laid out and had ever since been recognized as a public thoroughfare. Subsequently the plaintiff, in her capacity of executrix of the estate of John W. Robins, and several persons claiming to be his heirs at law, were made parties to the proceeding. At the interlocutory hearing the plaintiffs introduced evidence tending to establish their claim that they had title to five acres of land located in square 19, lot B, in the town of Talbotton, and that they and their predecessors in title had been in possession of the strip of land in dispute for forty years or more. The defendants offered evidence in support of their claim that the title to what was known as Monroe street was in the town, and that the fence sought to be removed was an obstruction placed therein. The presiding judge refused the prayer for injunction, stating in the written order passed that, under the evidence submitted, he found, as matter of fact, that the title to the strip of land in dispute was, in the year 1828, vested in the Town of Talbotton as one of the streets of that town, but the street was never actually opened in front of the premises of the plaintiffs, the needs of the town never having required that it be opened; that the convenience and needs of the town would now be better subserved by the opening of the street; that the plaintiffs and those under whom they claim have for forty years or more been in the possession of this strip of land, using and cultivating it for agricultural purposes, but have no grant or paper title thereto; that lot 19 in

the town of Talbotton, to which plaintiffs assert title, lies in square B of that town, and the land sought to be opened as a street appears on the map of Talbotton, as originally laid out, as a street on the north side of that lot, so that the title in question is not vested in the plaintiffs, unless the same has been acquired by prescription. The judge held, as matter of law, that no prescription could run against the town, the title being vested in it for public purposes by a grant of the land for public use as a street. Exception is taken by the plaintiffs to the order denying an injunction, and they further complain that the court erred in admitting, over their objection, certain evidence offered by the defendants to sustain their defense that the fee to the land in controversy was in the town and not in the plaintiffs.

*Jesse J. Bull* and *W. T. Letford,* for plaintiffs.

*Persons & McGehee,* for defendants.

EVANS, J.   (After stating the facts.)

In some municipalities the fee in the streets is in the city, while in others the public has only an easement in the use of the streets, with the title thereto vested in the abutting-land owners. Where the municipal corporation holds the fee-simple title to its streets, adverse possession can never ripen into prescription. *Norrell* v. *Augusta,* 116 *Ga.* 313. The municipality of Talbotton claims to have acquired title to its streets as follows: The County of Talbot was organized under the act approved December 24, 1827 (Acts 1827, p. 65). The act of organization directed that the justices of the inferior court should fix the site of their necessary public buildings, and for that purpose purchase a lot of land for a county town, and lay out the county town and dispose of the lots as they might. think most conducive to the public interests, reserving two lots of an acre each for academies, and four lots of an acre each for religious purposes. On March 13, 1828, William Gilbert conveyed by deed to the justices of the inferior court of Talbot county all of land lot 266 in the 16th district of that county. As appears from their minutes, the justices of the inferior court, on April 7, 1828, passed the following order: "Ordered that the county site be known as 'Talbotton,' and that the town lots in Talbotton be sold on the first Tuesday in May next on the premises. Ordered further, that Wm. McMurray be the surveyor of the town of Talbotton, for which service he should receive the sum of $1 per lot. Agree-

able to a plan recorded by the court. That the town of Talbotton be on lot 266 in the 16th district of Talbot county." The plan of the town, showing the streets and lots, was made by the designated surveyor, in 1828, and recorded on the minutes of the inferior court of Talbot county. On this plan Monroe street, which runs east from the northeast corner of the public square, was reserved as a street. Talbotton was incorporated as a town on December 20, 1828 (Acts 1828, p. 149). It was declared in that act that the "corporate authority and jurisdiction of said commissioners shall extend to and be exercised over all lots which are now or which may hereafter be laid out, within said town." It was also shown that many of the streets as laid out in the original survey of the town were now open, and had been for many years. From a certified copy of the minutes of the March term, 1829, of the justices of the inferior court, it appeared that a number of lots were sold on May 6, 1828, and among them lot No. 19 in square B. The plaintiffs claim title to this lot. There was objection to much of the evidence, but inasmuch as we are of the opinion that the court erred in refusing the injunction, even upon the assumption that the title to the street was in the town of Talbotton, we will forbear a discussion of the merits of these objections.

The street sought to be opened appears upon the plan of the town of Talbotton as made by the surveyor appointed by the justices of the inferior court. That part of the street alleged to have been obstructed had never been opened. Section 44 of the ordinances of the town of Talbotton provides, that "no person shall be allowed to erect any fence, railing, platform, steps, portico, or other obstructions, beyond the limits of his or their lot, and thus encroach upon the street, alley, or sidewalk of the town. In case any person is erecting or has erected any such obstruction, he, she, or they shall be notified by the marshal to remove the same; and upon failure to comply with the request of the marshal within twenty-four hours after the said notice, the marshal shall have the same removed, and the clerk shall issue an execution against the person so refusing for the expense incurred in having the same removed, and the additional sum that may be assessed by the mayor for not obeying said order, not to exceed $20 additional." At a called meeting on February 22, 1906, the following order was passed: "The city council of the town of Talbotton, Georgia,

hereby authorizes and requests the street committee to have obstructions removed from all of the streets of the town, and to put all streets in condition for public use and travel which said committee may think useful to the citizens or beneficial to the town." Under this order, and in pursuance to the ordinance just quoted, the Town of Talbotton was proceeding to open up for the first time this street contiguous to plaintiffs' property.

Very different remedies are provided for the recovery of land and the removal of obstructions from streets. The mere survey of and platting of a body of land into lots and streets, without more, is insufficient to lay off and open such streets. The survey only serves to define the location of the streets. When such streets are put into condition for travel, and the public is invited to use them, it is then that they become in fact streets. Until a street is so opened for public travel, the land does not partake of the character of a highway. If, after the land, has been surveyed, and before any streets have ever been opened up, a citizen enters into adverse possession of the same, it must be recovered by the municipality in some of the ways known to the law, before it can be opened up as a street. The mere fact that the title is in the municipality will not justify the municipality in taking possession of it in a summary way. Under the old English law, although the king could never be put out of possession in point of law by lawful entry of the subject, yet there could be an adverse possession in fact against the crown. Therefore, after such an adverse possession by a subject for twenty years, the crown could only recover the land by an information of intrusion; and it was held that ejectment would not lie at the suit of the grantee of the crown, notwithstanding the rights of the crown were not barred by the statute of limitations. Doe d. Wall (or Watt) *v.* Morris, 2 Scott, 276. See also *State* v. *Paxson,* 119 *Ga.* 733. But in this State.it was held, as early as 1830, that where the legal title to the soil is in a municipal corporation, it may maintain an action of ejectment to recover possession of a street. *Mayor of Savannah* v. *Steamboat Co.,* R. M. Charlton, 342. An action of trespass by a municipality was maintainable at common law for any interference with the public streets of the municipality, as for the erection of a stall in a public market place. *Northampton* v. *Ward,* 2 Strange, 1238. Even if the State in her sovereign capacity should have the right to enter upon her un-

granted lands and remove trespassers and intruders in the most summary manner, it would be an unwarranted extension of the principle to a political subdivision of the State. When the justices of the inferior court purchased the land from William Gilbert, it was an admission by them that the land had at some prior time been granted by the State, either to William Gilbert or some other person under whom he claimed. The Town of Talbotton, upon its incorporation, succeeded to the title of the justices of the inferior court. It occupied no better position than any other citizen in the recovery of the land. But when an action to recover land is brought by a subdivision of the sovereign State, its title, when once established, will prevail against the defendant's claim of a prescriptive title from possession, for whatever time. The difference between the municipal corporation and the citizen is not in the procedure, but in the fact that while prescription may run against the individual, it will not run against a political subdivision of the sovereign State.

The present proceeding is not intended to settle the title as a primary issue; indeed title is only incidentally involved, if at all. It is founded upon the hypothesis that a street has been laid out and opened, and has been obstructed. Any permanent structure in a street which materially interferes with travel therein is a nuisance per se. *Mayor of Columbus* v. *Jaques, 30 Ga. 506; City Council of Augusta* v. *Reynolds, 122 Ga. 754.* Under some circumstances even a private individual may abate a common nuisance which obstructs his individual right by removing it to enable him to enjoy that right. *Brown v. Perkins, 12 Gray, 89.* The positive obstruction of a public street may be abated by indictment or by injunction. *Elliott on Roads and Streets, §§ 662-664.* The rationale of the principle that an obstruction in a street may be summarily abated is upon the theory that the obstruction of a public street is a nuisance. It is not until a street has been defined by survey and laid out and opened by work that it becomes a street. There must be a street to be obstructed, before the structure alleged to be an obstruction amounts to a nuisance. This principle was recognized in *Bryans* v. *Almand, 87 Ga. 564,* where it was held that "While the municipal authorities of a city or town may, on complaint of a citizen, cause an obstruction to be removed from any public street in actual use by the public, yet where a street exists

only in the plan of such city or town, and has not been actually opened, worked by the municipal authorities and used by the public, but, on the contrary, has been in private occupation for thirty or forty years, this mode of procedure is not available." The error into which the learned judge inadvertently fell was in confusing a proceeding to enjoin a summary abatement of an obstruction of a street with a contest between a sovereign political subdivision (municipal corporation) and an individual over the ownership of the land. In the former the issue is whether a street in the actual use of the public has been obstructed, while in the latter the issue is that of title. The cases are altogether dissimilar, and are controlled by rules of law entirely different.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*