SAUNDERS *et al. v.* MAYOR &c. OF ARLINGTON *et al.*

1. Where a municipality was incorporated under the name and style of the "Mayor and Council of the Town of Arlington," with the power to sue and be sued in that name, and to a suit against the "Town of Arlington" it appeared and pleaded to the merits in its true name without raising the objection of misnomer, and subsequently the petition was so amended as to designate the defendant as the "Mayor and Council of the Town of Arlington," the error as to the name was waived by it. *Commissioners of McIntosh County* v. *Aiken,* 123 *Ga.* 647 (51 S. E. 585). See *Rhodes* v. *Louisville,* 121 *Ga.* 551 (49 S. E. 681). Such waiver was binding upon citizens and taxpayers who intervened and contested the right to validate bonds of the municipality (which was the object of the suit) ; and it was proper to overrule a demurrer by the intervenors on the ground that the suit was not brought against the municipality in its corporate name and was a mere nullity.

2. The charter of the town of Arlington (Acts 1890-1891, p. 867; Acts 1905, p. 607; Acts 1913, p. 492) confers on the authorities of the municipality the power to establish and maintain an "ice plant and cold storage system" within such municipality for the benefit of the inhabitants thereof, whenever they have complied with the preliminary steps for such purpose as provided by the constitution and statute laws of the State.

3. The evidence was sufficient to support the judgment validating the bonds, and none of the assignments of error are sufficient to require a reversal.

No. 438. JANUARY 21, 1918.

Validation of municipal bonds. Before Judge Harrell. Calhoun superior court. May 19, 1917.

*L. M. Rambo,* for plaintiffs in error. *B. W. Fortson, Pope & Bennet,* and *R. C. Bell, solicitor-general,* contra.

HILL, J. 1. The first headnote requires no elaboration.

2. R. C. Bell, as solicitor-general of the Albany circuit, filed his petition under the Civil Code, §§ 445 et seq., in the name of the State of Georgia "against the Town of Arlington, a municipal corporation existing under the laws of Georgia," to validate and confirm certain bonds for the purpose of installing an "ice plant and

cold-storage system in and for the Town of Arlington," etc. The Mayor and Council of the Town of Arlington filed an answer admitting all of the material allegations of the petition. Saunders and others filed an intervention in which (in addition to their demurrer as indicated in the first headnote) they raised certain questions as to the legality of the bond issue. The court passed an order validating the bonds, and the intervenors excepted.

The controlling question in the case is whether the Mayor and Council of the Town of Arlington, under the general-welfare clause of its charter, can install and operate an "ice plant and cold-storage system," and whether bonds can be issued and validated for that purpose. By the act of the legislature approved Oct. 9, 1891, granting a new charter for the town of Arlington (Acts 1890-1891, pp. 867, 870, sec. 10), it is provided that "said corporation shall have and enjoy all the rights, privileges, and powers incident to such corporations, not repugnant to the constitution of the United States, the constitution of this State, and the laws made in pursuance thereof; and said corporation, by their mayor and aldermen, shall have full power and authority to enact and enforce all ordinances, by-laws, rules and regulations necessary for the good government of said town and securing the health of the inhabitants and protection of property therein." *Express* provision is made in the charter for the erection, installation, and maintenance of a system of waterworks and an electric-light plant within said town. Acts 1905, p. 608, sec. 2 et seq. The charter also provides, under the general-welfare clause, that the town may issue bonds, in addition to the bonds already provided for, etc., in a certain amount, whenever the mayor and board of aldermen "shall deem it proper and expedient so to do, for the purpose of making any public improvement or improvements for the benefit of said town." Does this provision of the charter authorize the issuance of bonds for, and the erection and maintenance of, an ice plant and cold-storage system by the town? It is suggested that the town of Arlington had express authority given to it by the legislature to establish a waterworks and electric-light system, etc., and that, together with the general authority conferred of making "any other improvements within said town" (Acts 1913, p. 492, sec. 1), included the power to establish the ice plant and cold-storage system. Construing the two paragraphs of the charter together, we

are of the opinion that the legislative intent was to confer the power
to establish and maintain an ice plant and cold-storage system. In
*Frederick* v. *Augusta,* 5 *Ga.* 561, 567, it was held: (1) "A corporation is an artificial being, invisible, intangible, and existing
only in contemplation of law. Being the mere creature of law, it
possesses only those properties which the charter of its creation
confers upon it, either expressly or as incidental to its very existence. These are such as are supposed best calculated to effect the
object for which it was created." (2) "Where by the terms of
the charter a municipal corporation was vested with 'full power and
authority to make such assessments on the inhabitants of the city,
or those who hold taxable property therein, for the safety, benefit,
convenience and advantage of the said city, as shall appear to them
expedient: *Held,* that an assessment of a tax of one half of one
per cent. on the value of the real estate within the corporate limits
of the city, by the city council, for the purpose of constructing a
canal for the better securing an abundant supply of water for the
city, was not a violation of the charter, nor contrary to the laws
of the land." In *Mayor &c. of Rome* v. *Cabot,* 28 *Ga.* 50, this
court decided: "Under a power conferred by the legislature upon
a municipal corporation to make all contracts, in their corporate
capacity, which they may deem necessary for the welfare of the
city, and which do not conflict with the constitution and laws of
the Federal or State governments, they have the right to make a
contract for the construction of waterworks." And see, to the
same effect, *Linton* v. *Athens,* 53 *Ga.* 588, 595; *Hall* v. *Calhoun,*
140 *Ga.* 611 (79 S. E. 533). In the *Linton* case it is said "that
in this State at least, inasmuch as the power to levy and collect taxes
is vested in the General Assembly, that it would, in the language
of Chief Justice Marshall, be *unfit* for the judicial department of
the State government to inquire whether the lawmaking power
of the State has acted wisely or unwisely, justly or unjustly, in
taxing the property of the complainant, as set forth in the record."
In the *Frederick* case, supra, it was said: "When the lawmaking
power acts within the scope of its delegated authority, the courts
can not interfere. It is the duty of the judicial tribunals of the
country to *execute* and *enforce* all *constitutional* laws, and not to
*make* them. The remedy against the effect of oppressive legislation, delegated to municipal corporations, is in the hands of the

people, or their representatives." It was held in *Mayor &c. of Cartersville* v. *Baker,* 73 *Ga.* 686: "Unless there is something in the charter of a municipal corporation which forbids the building of school houses, the city may do so. This is within the scope of the general powers of a municipal corporation, and is not prohibited by the constitution of 1877." It was held in *Heilbron* v. *Cuthbert,* 96 *Ga.* 312, 314 (23 S. E. 206), that under a general-welfare clause which empowered the mayor and council to "contract and be contracted with; sue and be sued; . . and . . do all things for the benefit of the city, and all things not in violation of the constitution and laws of this State," the mayor and council could, upon complying with the requisite constitutional and legal provisions, contract a debt for the construction and maintenance of waterworks and an electric-light plant, and could issue bonds for this purpose. In the case of *City Council of Dawson* v. *Waterworks Co.,* 106 *Ga.* 696, 709 (32 S. E. 907), Judge Cobb, in delivering the opinion of the court, said: "The authority of the General Assembly to confer upon municipal corporations the power to tax is restricted, but it exists to the extent that a municipal corporation may be authorized to levy taxes for any purpose which is purely public and municipal in its nature." And this view is in harmony with the weight of authority. See Sun Pub. Assn. *v.* New York, 152 N. Y. 257 (46 N. E. 499, 37 L. R. A. 788); State *v.* Toledo, 48 O. St. 112 (26 N. E. 1061, 11 L. R. A. 729).

The expression last quoted is the keynote to the present case. Is the levy of the taxes and issuance of the bonds proposed for the purpose of establishing an ice plant and cold-storage system in the town of Arlington *purely public and municipal* in its nature? The cases cited above are authority for the proposition that under the general-welfare clauses of the municipal charters dealt with, waterworks, electric-light plants, schoolhouses, canals, etc., may be established and maintained by taxation, where they are *public* and *municipal* in their nature. Can the doctrine be extended to "ice plant and cold-storage systems"? In the case of *Holton* v. *Camilla,* 134 *Ga.* 560, 566 (68 S. E. 472, 31 L. R. A. (N. S.) 116, 20 Ann. Cas. 199), where the charter of Camilla provided that the city should have the power "to acquire by purchase or otherwise, own, and equip ice-plants and cold-storage plants, in connection with waterworks system of said city or otherwise, and to do and

perform all acts in connection with ownership and operation of and conduct of the same, and to issue bonds of said city, for the purpose of acquiring, owning, and equipping or operating said plants," it was held: "The operation of an ice plant by the municipal authorities of the City of Camilla, in connection with the electric-light and waterworks plant, is not in violation of par. 2, sec. 1, art. 1, or of par. 3, sec. 1, art. 1, or of par. 25, sec. 1, art. 1 of the constitution of this State, or otherwise illegal." In delivering the opinion of the court Mr. Justice Holden said: "If a city has the right to furnish heat to its inhabitants because conducive to their health, comfort, and convenience, we see no reason why they should not be permitted to furnish ice." And we may add that if a municipality can establish an ice plant and furnish ice to its citizens, which in the *Camilla* case it was decided could be done under the express terms of the charter to "equip ice plants and cold-storage plants," what good reason is there for deciding in the present case that an ice and cold-storage plant can not be established by the municipality, where the charter provides that the corporation shall have authority to provide for the erection, installation, and maintenance of a system of waterworks and an electric-light plant within the town, in connection with its waterworks and electric-light system, and also may issue bonds in addition to the bonds already provided for" (for waterworks and electric-light plant), and "they are hereby authorized to do so under the same rules, regulations, and restrictions as prescribed in the foregoing sections, in a sum not to exceed ten thousand dollars, whenever they shall deem it proper and expedient so to do, for the purpose of making any public improvement or improvements for the benefit of said town." Acts 1905, p. 609, sec. 6. If establishing an ice plant by express authority is for the public good and can be upheld, we fail to see why the establishment and maintenance of an ice plant and cold-storage system for the municipality is not conducive to the health, comfort, and convenience of the citizens, and a *public improvement* and for the benefit of the town; and why such improvements do not fall within the power conferred by the legislature in the above-quoted sections of the municipal charter now under review. We think such power *is* conferred by the legislature; and the matter is in the hands of the legal voters of the municipality as to whether they will exercise

the power conferred on them and the municipality to issue bonds for the purpose of establishing the ice plant and cold-storage system. One of the amendments to the charter of the town of Arlington (Acts 1913, p. 492) contains the following in its caption: "so as to provide that the mayor and aldermen of said town shall have the power and authority to call an election or elections to submit the question of issuing bonds for a sewerage system; and for construction, equipping, and maintaining a school building or buildings; and for the extension of the electric-light and water system of the said town, and for making any other public improvements, and for other purposes;" and the first section of the act embodies the same language. The language "any other public improvements" is broad, and certainly must refer to *public improvements* other than those already enumerated. It can hardly be doubted that the installation of an ice plant and cold-storage system for the benefit of the citizens of the town is a public improvement, and one which would promote the health and comfort of the citizens as much as those specifically enumerated in the act. It would mean the furnishing of pure ice to its citizens, under sanitary conditions and regulations, free from disease germs, etc.; and the same may be said of the cold-storage system for the preservation of perishable articles of food. These things certainly tend to the preservation of health, convenience, and comfort of the citizen; and we see no good reason why, in the exercise of the police power of the State, this right can not be and has not been conferred by the legislature on the municipality of Arlington by the grants in its charter. In Sun Publishing Asso. *v.* New York, 8 App. Div. 230, 238 (40 N. Y. Supp. 607), the Supreme Court of New York said: "But the purpose must be primarily to satisfy the need or contribute to the convenience of the people of the city at large. Within that sphere of action, novelty should impose no veto. Should some inventive genius bye and bye create a system for supplying us with pure air, will the representatives of the people be powerless to utilize it in the great cities of the State, however extreme the want and dangerous the delay? Will it then be said that pure air is not so important as pure water and clear light? We apprehend not." The decision just cited was affirmed on review by the Court of Appeals of New York: 152 N. Y. 257, supra. In State ex rel. *v.* City of Toledo, 48 Ohio St. 112, 134, 140 (26 N. E. 1061, 11

L. R. A. 729), the court said: "Taxation implies an imposition for public use. . . But what are public purposes is a question that must be left to the legislature, to be decided upon its own judgment and discretion. . . Water, light, and heat are objects of prime necessity. Their use is general and universal. It is now well settled, that the legislature in the exercise of its constitutional power may authorize cities to appropriate real estate for waterworks. . . What we have said in reference to waterworks is for the most part applicable to the erecting and maintaining of natural or artificial gas works. . . Heat being an agent or principal indispensable to the health, comfort, and convenience of every inhabitant of our cities, we do not see why through the medium of natural gas it may not be as much a public service to furnish it to the citizens as to furnish water. . . It is sufficient if every inhabitant who is so situated that he can use it has the same right to use it as the other inhabitants. . . The establishment of natural gas works by municipal corporations, with the imposition of taxes to pay the cost thereof, may be a new object of municipal policy. But in deciding whether, in a given case, the object for which taxes are assessed is a public or a private purpose, we can not leave out of view the progress of society, the change of manners and customs, and the development and growth of new wants, natural and artificial, which may from time to time call for a new exercise of legislative power. And in deciding whether such taxes shall be levied for the new purposes that have arisen, we should not, we think, be bound by an inexorable rule that would embrace only those objects for which taxes have been customarily and by long course of action levied." If pure air is as important as pure water and clear light, why is not ice and cold storage as important as either as a means for the preservation of the food we eat, which is so vital to health and comfort? In this day of advanced civilization and progress the preservation of meats, vegetables, milk, butter, and the like, is as essential to health and comfort as pure water and pure air. Scientists tell us that certain germs, like typhoid, which get into the human system and destroy human life, enter largely, if not entirely, through the mouth in the way of impure water and impure food. It would be strange, indeed, if a community has been given the power by the legislature to make "any public improvement" for the benefit

of the town and for "securing the health of the inhabitants," and yet can not exercise that power under the broad terms given by the charter in order to make secure their health, lives, and comfort. We know of no reason, constitutional or otherwise, especially in view of the foregoing decisions of this and other courts, which contravenes the broad power conferred by the legislature on the Mayor and Council of the Town of Arlington to establish an ice plant and cold-storage system therein.

3. The evidence was sufficient to support the judgment validating the bonds, and none of the assignments of error are sufficient to require a reversal.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*

BECK, P. J., and GEORGE, J., specially concurring. In view of the rulings made in the case of *Holton* v. *Camilla,* cited in the foregoing opinion, where it was recognized that ice plants and cold-storage plants are improvements having a municipal and public character, we concur in the ruling in the instant case.

ATKINSON, J. This concurrence, relatively to the ruling announced in the second headnote, is solely on the basis of the broad language of the act of 1891, quoted in the opinion, and the decision by this court in *Holton* v. *Camilla,* supra.