WILLIAMS *et al. v.* McINTOSH COUNTY.

No. 10378.   NOVEMBER 16, 1934.

738

*Tyson & Tyson,* for plaintiffs.    *M. Price,* for defendant.

BECK, P. J. (After stating the foregoing facts.)    The court did not err in refusing to grant an injunction.    Under the pleadings and the agreed statement of facts, the county commissioners were not seeking to do anything that was ultra vires or that was not authorized by the act of 1933, entitled "an act to authorize the board of county commissioners of all counties in this State, falling within the prescribed limits, to acquire and hold lands for the purpose of creating public parks," etc., approved March 24, 1933 (Ga. L. 1933, p. 204).    That act reads as follows:

"Section 1.  That the board of county commissioners or other

administrative authority of all the counties in this State having a present population of not less than five thousand seven hundred sixty nor more than five thousand seven hundred sixty-five, according to the United States census for the year 1930, and without regard to their subsequent variations in population, shall have authority to acquire, own, hold, and administer lands for the purpose of creating public parks, and/or the preservation of historic sites, landmarks, and places, and/or the erection of monuments or memorials and other similar public purposes. And the said county authorities are hereby granted the right of eminent domain to acquire any property suitable for any of the above purposes, and the authority to exercise such right of eminent domain in accordance with the provisions of law now or hereafter existing for the condemnation of property for public purposes.

"Section 2. Be it further enacted, that the said county authorities shall have authority to accept donations of money or property for any of the purposes of this act, and to charge admission fees to such parks and memorials for the purpose of providing funds for the maintenance and upkeep thereof."

The statute just quoted, and existing laws the validity of which is not questioned, entitle the county commissioners to do the acts which are complained of as being illegal. The acceptance of the loan referred to and the issuing of the bonds and the executing of the evidence of indebtedness in accordance with the act of 1933, under the facts agreed to, is not the creation of a debt on the part of the county. Similar principles and questions were involved in *State* v. *Regents of University System,* 179 *Ga.* 210 (175 S. E. 567). In that case it was held in substance that loan agreements made by Regents of University System and Board of Regents with Federal government, whereby bonds would be issued by the Board of Regents and purchased by the government to provide funds for stated university uses, bonds to be paid exclusively out of matriculation, laboratory, hospital, and athletic fees, are not illegal, since a mere pledge of income would not be a pledge of "property" and could not result in a sale of "property" within the purview of the statute (Cobb's Digest, 1084, § 3; Civil Code 1910, §§ 1282, 1363, 1364, 1379(9), 1396; Ga. L. 1931, pp. 20, 21, 24, §§ 45, 48, 61). And in the course of the opinion it was said: "From what has been said it is our opinion that what is intended to be done by the Re-

gents of the University System of Georgia, through its Board of Regents, will not in any manner infringe the constitution as contended. This conclusion is not contrary to such decisions as *Renfroe* v. *Atlanta*, 140 *Ga*. 81 (78 S. E. 449, 45 L. R. A. (N. S.) 1173), and *Byars* v. *Griffin*, 168 *Ga*. 41 (147 S. E. 66). These and similar cases concerned questions of whether stated contracts would create debts within the meaning of the constitutional debt limitations as to counties, municipalities, and other political divisions. If the proposed bonds here under consideration would create a debt at all, it would be a debt against a corporation governed by the Board of Regents, and not against the State. This conclusion is not based upon the terms and conditions of the particular contract. Regardless of the stipulations made, the State of Georgia could never be called upon to pay these bonds, nor would it be under any obligation, moral or otherwise, to levy any tax for the purpose of repairing any loss that might result to the university in consequence of these transactions, if the action of the board should ultimately prove to be unwise and a loss should result. If the payment of any these bonds from the income as pledged should by any chance cause such a drain upon the resources of the affected institution that it might be in need of increased appropriations in order to function properly as an educational unit, the State would still be under no obligation to supply the deficit, even though it might desire to do so and actually do so. Such a condition would place the State only in the same situation as if the regents should be guilty of waste or mismanagement whereby they could not function without increased appropriations. If waste and mismanagement would not create a debt against the State, the issuance of these bonds would not do so." It will be noticed from the act which we have quoted that the county commissioners have authority to "acquire, own, hold, and administer lands for the purpose of creating public parks;" and they are also granted the right of eminent domain to acquire any property suitable for this purpose. They are also given the authority to exercise the right of eminent domain in accordance with the provision of law now or hereafter existing for the condemnation of property for public purposes. It does not appear that the county authorities are doing anything which they are not authorized to do under existing laws the validity of which is nowhere questioned, and under the broad terms of the act of 1933.

■ But the judgment of the court below is excepted to because "it holds the act of 1933 (Ga. L. 1933, p. 204) valid, when the same is void in that it is violative of article 1, section 4, paragraph 1, of the constitution." This exception is not sufficient to raise a question as to the constitutionality of the act of 1933, The paragraph of the constitution referred to is in part as follows: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." Civil Code, § 6391. This portion of the constitution quoted contains two distinct provisions. First, "Laws of a general nature shall have uniform operation throughout the State," *and* "no special law shall be enacted in any case for which provision has been made by an existing general law." And the exception to which we refer does not specify which of these provisions the act violates, nor does it attempt to specify wherein it violates either of these constitutional provisions; and therefore the exception is not sufficient to raise any question as to the constitutionality of the act. This court will not pass upon the constitutionality of a statute where the particular provision of the constitution alleged to have been offended by the statute is not clearly designated. *Inlow* v. *State,* 168 *Ga.* 377 (147 S. E. 881); *Griggs* v. *State,* 130 *Ga.* 16 (60 S. E. 103); *Spielberger* v. *Hall,* 159 *Ga.* 511 (126 S. E. 391). In *Curtis* v. *Helen,* 171 *Ga.* 256 (155 S. E. 202), it was said: "The charge that said ordinance 'is void for the reason that it violates acticle one, section one, paragraph three, of the constitution of the State of Georgia,' as set out in section 6359 of the Civil Code of Georgia of 1910, as follows: 'No person shall be deprived of life, liberty, or property, except by due process of law,' without stating wherein it violates that provision of the constitution, is too indefinite to invoke a ruling upon the unconstitutionality of the ordinance. Civil Code, § 6392; *Pace* v. *Goodson,* 127 *Ga.* 211 (56 S. E. 363); *Carswell* v. *Wright,* 133 *Ga.* 714 (4) (66 S. E. 905). For like reason the further charge that said ordinance violates the provisions of the fourteenth amendment to the Federal constitution, which declares: 'nor shall any State deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' is insufficient to invoke a ruling upon the unconstitutionality of the ordinance." And more-

742

over, the exception to the judgment overruling the attack upon the statute because it is unconstitutional is too indefinite, in that it fails to state wherein the statute violates a specified provision of the constitution. *Curtis* v. *Helen,* supra; *Jordan* v. *State,* 172 *Ga.* 857 (159 S. E. 235). In view of these authorities and others touching the same question which might be cited, no question as to the constitutionality of the act is presented for decision.

*Judgment affirmed. All the Justices concur.*