18976.   CITY OF MOULTRIE *et al. v.* COLQUITT COUNTY
RURAL ELECTRIC COMPANY.

Argued June 13, 1955—Decided September 16, 1955—Rehearing denied
October 13, 1955.

844

*Whelchel & Whelchel, Hoyt H. Whelchel*, for plaintiffs in error. *Moore, Gibson, DeLoache & Gardner*, contra.

HEAD, Justice. ■ "The general rule is that courts exercising equitable jurisdiction will not enjoin criminal prosecutions; and this rule is ordinarily applicable to proceedings to punish for violations of municipal ordinances, which are quasi criminal in their character." *Mayor &c. of Shellman* v. *Saxon*, 134 *Ga.* 29 (1) (67 S. E. 438, 27 L. R. A. (NS) 452) ; *Jones* v. *Carlton*, 146 *Ga.* 1 (90 S. E. 278) ; *Burton* v. *City of Toccoa*, 158 *Ga.* 63 (122 S. E. 603) ; *Corley* v. *City of Atlanta*, 181 *Ga.* 381 (182 S. E. 177) ; *Powell* v. *Hartsfield*, 190 *Ga.* 839 (11 S. E. 2d 33) ; *City of Abbeville* v. *Renfroe*, 192 *Ga.* 467 (15 S. E. 2d 782) ; *Stephens* v. *City Council of Augusta*, 193 *Ga.* 815 (20 S. E. 2d 80) ; *City of Atlanta* v. *Universal Film Exchanges*, 201 *Ga.* 463 (39 S. E. 2d 882) ; Code § 55-102.

Where repeated prosecutions are threatened under a void municipal ordinance and the effect of the prosecutions would tend to injure or destroy the property of the person so prosecuted, or deprive him of the legitimate enjoyment of his profits, equity may entertain a suit to inquire into the validity of the ordinance and to enjoin its enforcement. *Carey* v. *City of Atlanta*, 143

*Ga.* 192 (84 S. E. 456, L. R. A. 1915D 684, Ann. Cas. 1916E 1151) ; *Upchurch* v. *City of LaGrange,* 159 *Ga.* 113 (125 S. E. 47) ; *Morrow* v. *City of Atlanta,* 162 *Ga.* 228 (133 S. E. 345) ; *Chaires* v. *City of Atlanta,* 164 *Ga.* 755 (139 S. E. 559, 55 A. L. R. 230) ; *City of Douglas* v. *South Ga. Grocery Co.,* 178 *Ga.* 657 (174 S. E. 127) ; *Great Atlantic & Pacific Tea Co.* v. *City of Columbus,* 189 *Ga.* 458 (6 S. E. 2d 320).

In order to determine whether or not the petitioner had a property right pursuant to valid contracts for its electric service within the territory involved, consideration must be given to the charter powers of the parties and the record in the cause. The Electric Membership Corporation Act of 1937 (Ga. L. 1937, pp. 644, 645; Code, Ann. Supp., §§ 34A-102, 34A-103), under which the petitioner was chartered and is operating, provides that such corporations may engage in the business of "the furnishing of electric energy to persons in rural areas who are not receiving electric service from any corporation subject to the jurisdiction of the Georgia Public Service Commission, or from any municipal corporation." "Rural area" is defined as "any area not included within the boundaries of any incorporated or unincorporated city, town or village, having a population in excess of 1,500 inhabitants, according to the last Federal census, and includes both the farm and non-farm population."

The charter powers of the City of Moultrie (Ga. L. 1937, p. 1990; Ga. L. 1943, pp. 1458-1499) authorize the city to engage in the business of furnishing electrical energy. It has been held, in the absence of specific legislative authority, that a municipal corporation may own and operate a water works or electric system under its general-welfare clause or under its contractual powers. *Mayor &c. of Rome* v. *Cabot,* 28 *Ga.* 50; *Heilbron* v. *Mayor &c. of Cuthbert,* 96 *Ga.* 312 (23 S. E. 206).

The right, power, and authority of each of the parties to engage in the business of furnishing electrical energy is not questioned in this case. The petitioner contends that its right to serve customers in the disputed area is based upon the prior construction of its lines to serve customers with whom it had contracts and at a time when the territory in dispute had not been included within the corporate limits of the city. The city contends that the petitioner extended its lines with notice of the city's intention to

include the territory within its corporate limits, that the petitioner's only customers for permanent service were procured after the territory was annexed to the city, and that the petitioner can not operate within the territorial limits of the city.

The uncontroverted facts appearing from the record disclose that the petitioner had electric lines and distribution lines in a part of East Moultrie Heights Subdivision, adjoining the city, continuously from the year 1951. It had no distribution lines in blocks 6, 7, and 8 of section 2, the territory involved in the present dispute. This property was undeveloped prior to 1954. On August 17, 1954, the owner of the property appeared before the mayor and council of the city and requested in writing that this territory be taken into the city. At that time an ordinance was passed on first and second reading, to include the territory in the city. The ordinance was finally passed on November 2, 1954.

It appears from the testimony of H. S. Glenn, the manager of the petitioner: He had notice from a publication appearing in the paper in August, 1954, that the city proposed to annex blocks 6, 7, and 8 of section 2, and on or about November 3, 1954, he was advised by the city manager that the territory had been annexed. At the time the litigation was instituted by the petitioner, it was not furnishing permanent service to any customer in blocks 6, 7, and 8 of section 2 of the subdivision. The city offered to pay the petitioner in full for its lines in this area before the petitioner's suit was filed, and this offer was refused.

The petitioner introduced, and relies upon, some nine contracts or applications for its service. Five of these applications were signed by Fred Nijem, the first two being dated November 10, 1954. The applications signed by Nijem appear to have been subsequently approved by agents of the petitioner. The other four applications do not appear to have been approved by the petitioner's agents.

The first requisite of a valid contract is that there shall be parties able to contract. Code § 20-107. The Electric Membership Corporation Act (Ga. L. 1937, pp. 644, 645; Code, Ann. Supp., §§ 34A-102, 34A-103), provides that such corporations can not operate within the boundaries of an incorporated city having a population in excess of 1,500 inhabitants. Whether cal-

culated by the census of 1930 or of 1950, the City of Moultrie had in excess of 1,500 inhabitants prior to and at the time written applications were made to the petitioner for electric service. The limitation imposed by the Electric Membership Corporation Act, that corporations created under that act may operate electric lines in rural areas not receiving service from a municipal corporation or a corporation regulated by the Public Service Commission, is a limitation to be determined at the time the application for service is made.

■ The petitioner attacks an ordinance of the City of Moultrie passed on January 18, 1955, making it unlawful for any person, firm, or corporation to maintain poles, wires, or electric apparatus within the city without the consent of the mayor and council. It is alleged that this ordinance "is unconstitutional and void as being discriminatory against petitioner," and is "arbitrary and unreasonable" in violation of art. I, sec. I, pars. II and III of the Constitution of the State of Georgia and the Fifth and Fourteenth Amendments to the Constitution of the United States.

The allegations attacking the ordinance are wholly insufficient to make any question as to its constitutionality. The assertion that a law or an ordinance violates a stated provision of the Constitution as being discriminatory, arbitrary, and unreasonable, without setting out how or wherein such ordinance is discriminatory, arbitrary, and unreasonable, is too indefinite to invoke any ruling upon the constitutionality of such law or ordinance. *Hood* v. *Mayor &c. of Griffin,* 113 *Ga.* 190, 191 (38 S. E. 409); *Curtis* v. *Town of Helen,* 171 *Ga.* 256, 257 (2c) (155 S. E. 202); *Jordan* v. *State,* 172 *Ga.* 857 (159 S. E. 235); *Montgomery &c. Freight Lines* v. *Georgia Public Service Commission,* 175 *Ga.* 826, 831 (166 S. E. 200); *Herndon* v. *State,* 179 *Ga.* 597, 602 (176 S. E. 620); *Williams* v. *McIntosh County,* 179 *Ga.* 735, 741 (177 S. E. 248); *Gray* v. *City of Atlanta,* 183 *Ga.* 730 (189 S. E. 591); *Rose Theatre* v. *Lilly,* 185 *Ga.* 53 (193 S. E. 866); *Poole* v. *Arnold,* 187 *Ga.* 734, 742 (2 S. E. 2d 83); *Abel* v. *State,* 190 *Ga.* 651 (10 S. E. 2d 198); *Estes* v. *Jones,* 202 *Ga.* 749 (44 S. E. 2d 550).

No attack is made by any allegation of the petition upon the act of the City of Moultrie in annexing blocks 6, 7, and 8 of section 2 of East Moultrie Heights Subdivision. Whether the ordinance may be valid or invalid, constitutional or unconstitu-

tional, the petitioner would have no right to erect poles and lines and electrical apparatus in, on, over, and upon the streets of the city without specific authority to do so. The general law on municipal corporations provides: "Without express legislative authority, a municipality may not grant to any person the right to erect or maintain a structure or obstruction in a public street." Code § 69-304. Whether or not the City of Moultrie has express legislative authority to grant to another the right to maintain obstructions in its public streets need not be determined. The petitioner has no grant of authority from the city to erect or maintain poles or lines within its corporate limits, and any attempt by the petitioner to erect distribution lines in, on, over, and upon the streets of the city would constitute a public nuisance. Any unauthorized and illegal obstruction of a public street is a nuisance. *Mayor &c. of Columbus* v. *Jaques,* 30 *Ga.* 506; *Simon* v. *City of Atlanta,* 67 *Ga.* 618 (44 Am. R. 739); *Robins* v. *McGehee,* 127 *Ga.* 431 (56 S. E. 461); *Rider* v. *Porter,* 147 *Ga.* 760 (95 S. E. 284); *Williamson* v. *Souter,* 172 *Ga.* 364 (157 S. E. 463); *Harbuck* v. *Richland Box Co.,* 204 *Ga.* 352 (49 S. E. 2d 883); *City of East Point* v. *Henry Chanin Corporation,* 210 *Ga.* 628 (81 S. E. 2d 812).

Since neither the petition nor any evidence introduced by the petitioner makes any attack upon the validity of the action of the city in annexing the territory in question under the act of 1946 (Ga. L. 1946, pp. 130, 131), the petitioner could not legally extend its electric lines in the corporate limits of the city (under the Electric Membership Corporation Act of 1937, Ga. L. 1937, pp. 644-659; Code, Ann. Supp., Chapter 34A), and would not be entitled to injunctive relief. This would be true even should the ordinance prohibiting the use of the city's streets be declared void.

■ The contention is made for the first time in the brief of counsel that the City of Moultrie did not promptly comply with the requirements of the act of 1946 (Ga. L. 1946, pp. 130, 131) by giving notice to the Secretary of State of its action in extending its limits. Questions not made upon the trial, and presented for the first time in the brief of counsel in this court, present nothing for review. *Rogers* v. *Taintor,* 199 *Ga.* 192 (33 S. E. 2d 708).

The petitioner was not entitled to the equitable relief of injunction, and the court erred in its order in allowing the petitioner to continue to operate in territory within the City of Moultrie.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., and Candler, J., who dissent.*

WYATT, Presiding Justice, dissenting. ■ I can not agree with the opinion of the majority in this case. The trial court was authorized to find from the evidence that Colquitt County Rural Electric Company had for a number of years been serving electricity to East Moultrie Heights subdivision, which was outside the city limits of Moultrie; that blocks 6, 7, and 8 in section 2 were a part of this subdivision; that recently the said electric company placed poles and lines in blocks 6, 7, and 8 and were serving contractors and owners of property with electricity for the purpose of constructing homes; that contracts had been made with certain owners in said blocks for the purpose of furnishing electricity to the new homes being constructed; that, after all this had been done, the City of Moultrie had by ordinance, as provided by law, extended its city limits so as to take into the city limits of Moultrie said blocks 6, 7, and 8 of said subdivision. The City of Moultrie then arrested the employees of the electric company engaged in wiring the houses and stringing lines to the houses and advised them to the effect that they would be arrested and placed in jail every time they entered upon the property in question for the purpose of providing electricity.

The controlling question here presented is, when a rural electric company enters a territory that is clearly rural at the time, and thereafter the territory is taken into the limits of a city, what are the rights of the city and the rural electric company as to providing electricity to customers in the territory involved? Neither Federal nor State law deals specifically with this question. It therefore becomes the duty of a court of equity to fill in the vacuum created by the law and do justice and equity to all parties concerned.

The Congress of the United States, by the Rural Electrification Act of 1936 (7 U. S. C. A. 547, § 902) attempted to make electricity available to people in rural areas who could not otherwise be served. It was provided that co-operative, non-profit electric membership corporations organized under the laws of any

State or territory of the United States could borrow money from the United States Government for the purpose of the construction and operation of self-liquidating electric systems furnishing current to persons in rural areas, and the defendant in error here was such a system. The administrator, however, was required to find and certify that in his judgment the security for the loan was reasonably adequate, and that such loans would be repaid within the time agreed. It must be noted here that, when these loans are fully repaid, these membership corporations become private corporations in every sense of the word.

The case of *Cobb County Rural Electric Membership Corporation* v. *Board of Lights*, 211 *Ga.* 535 (87 S. E. 2d 80), does not answer the question here presented. In that case the rural electric company sought to enjoin the City of Marietta from furnishing electric service to anyone in the territory in question, thereby giving the rural electric company a monopoly in so far as that particular territory was concerned. In the instant case, the rural electric company simply seeks to enjoin the City of Moultrie from preventing it from carrying out the contracts it may have with its customers. The trial judge in the instant case in his judgment expressly preserved the right of the City of Moultrie to seek customers in the territory involved, thus leaving the territory open as a territory in which the City of Moultrie and the rural electric company could compete for customers.

We look to see what would be the result of any other holding by this court. It would simply mean that, when the rural electric company has entered a territory not profitable enough to attract cities or private companies, and has developed the area with money furnished by the Federal Government to these non-profit companies to a point that it has become profitable, their business could be gradually taken from them and all chance of ever repaying the Federal Government would be gone. This result does not sound like equity to the writer. It would also mean that the Congress of the United States in creating the Rural Electrification Authority planted the germ in the legislation that would mean its ultimate destruction. Even in these fast-moving, modern times I do not believe it was the intention of the Congress to play with the taxpayers' money in this fast and loose manner.

The territory here involved was clearly rural when entered

into by the rural electric company, and when taken into the city, the city did so with full knowledge that the rural electric company was operating in the territory. It seems to me that the judgment of the trial court, leaving both parties to operate in this particular territory on a free competitive basis, is the only judgment that could have provided equity for all parties concerned. It is my opinion that courts should encourage and not prevent competition.

■ In addition to what has been said above, it appears from a reading of the Electric Membership Act (Ga. L. 1937, p. 644) that the terms of the act settle the question here presented. Section 2 of the act defines various terms used in the act, and division 8 of this section reads as follows: " 'Rural Area' means any area not included within the boundaries of any incorporated or unincorporated city, town, or village, having a population in excess of 1,500 inhabitants, according to the last Federal census, and includes both the farm and non-farm population." It will be noted that the General Assembly in defining "Rural area" tied it down to the population according to the census of 1930. This being true, under the very terms of the act itself, the territory here in question is now a "rural area" as that term is defined in the act, supra. This could have been done by the General Assembly for no other reason than to prevent co-operative, non-profit electric companies from being pushed out of territory they had developed, just as is sought to be done in this case.

I am authorized to say that Candler, Justice, concurs in this dissent.